# 21-2656

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

TYSON POULOS,

*Plaintiff-Appellant,*

-against-

COUNTY OF WARREN, WARREN COUNTY SHERIFF'S DEPARTMENT, DUSTIN SPRING, CORRECTIONS OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHARLENE MADAY, CORRECTIONS OFFICER, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, MATTHEW HUBBARD, CORRECTIONS OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHRISTOPHER PERILLI, CORRECTIONS OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, BARRETT SPRING, SERGEANT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHRISTOPHER HATIN, INVESTIGATOR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, WARREN COUNTY DISTRICT ATTORNEY'S OFFICE, MATTHEW BURIN, ASSISTANT DISTRICT ATTORNEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,

*Defendants-Appellees,*

KATHLEEN HOGAN, WARREN COUNTY DISTRICT ATTORNEY, IN HER OFFICIAL CAPACITY,

*Defendant.*

*On appeal from Order and Judgment of the U.S.*
*District Court for the Northern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT

HELD & HINES LLP
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com
*Attorneys for Plaintiff-Appellant*

Philip M. Hines, Esq.
*On the brief*

<u>TABLE OF CONTENTS – BRIEF</u>

*Page*

TABLE OF AUTHORITIES ........................................................................ iii

    CASES ........................................................................................... iii

    STATUTES.......................................................................................iv

JURISDICTIONAL STATEMENT...............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................2

STATEMENT OF FACTS AND PROCEDURAL HISTORY......................3

ARGUMENT ................................................................................................8

    <u>POINT I</u>
    THE DISTRICT COURT ERRED IN DETERMINING THAT THE
    PLAINTIFF DID NOT SUFFER THE DEPRIVATION OF A
    LIBERTY INTEREST ..........................................................................9

        A.  PLAINTIFF WOULD HAVE BEEN RELEASED ON HIS
            OWN RECOGNIZANCE ON THE UNDERLYING DRUG
            CHARGES HAD THE FALSE AGGRAVATED
            HARASSMENT CHARGES NOT BEEN BROUGHT ................. 9

        B.  THE DISTRICT COURT FAILED TO TAKE
            COGNIZANCE OF PLAINTIFF'S OTHER LIBERTY
            INTERESTS.................................................................................11

    <u>POINT II</u>
    THE DISTRICT COURT ERRED IN DETERMINING THAT THE
    FALSE IMPRISONMENT CLAIMS WERE TIME-BARRED .....................16

    <u>POINT III</u>
    THE DISTRICT COURT ERRED IN DETERMINING THAT THE
    MALICIOUS PROSECUTION CLAIM FAILED BECAUSE
    PLAINTIFF DID NOT SUFFER DEPRIVATION OF A LIBERTY
    INTEREST....................................................................................21

i

POINT IV
THE DISTRICT COURT ERRED IN DETERMINING THAT THE
CLAIM FOR DEPRIVATION OF A FAIR TRIAL FAILED
BECAUSE PLAINTIFF DID NOT SUFFER DEPRIVATION OF A
LIBERTY INTEREST ...................................................................................23

POINT V
THE DISTRICT COURT ERRED IN DETERMINING THAT THE
CLAIM FOR FALSIFICATION OF EVIDENCE FAILED BECAUSE
PLAINTIFF DID NOT SUFFER DEPRIVATION OF A LIBERTY
INTEREST .....................................................................................................26

POINT VI
THE DISTRICT COURT ERRED IN DETERMINING THAT THE
CONSPIRACY CLAIMS FAILED .................................................................26

POINT VII
THE DISTRICT COURT ERRED IN DETERMINING THAT THE
MONELL CLAIM FAILED ............................................................................30

POINT VIII
THE DISTRICT COURT ERRED IN DENYING LEAVE TO AMEND
THE COMPLAINT ........................................................................................31

CONCLUSION ..........................................................................................................32

CERTIFICATE OF COMPLIANCE ..........................................................................34

## TABLE OF AUTHORITIES

**Cases:**

*Allen v. City of New York*, 480 F.Supp. 2d 689 (S.D.N.Y. 2006) ...............................15

*Buari v. City of New York*, 2021 U.S. Dist. LEXIS 61273 (S.D.N.Y. 2021)...............32

*Butler v. Hesch*, 286 F. Supp. 3d 337 (N.D.N.Y. 2018) ........................................17, 18

*Cudnik v. Kreiger*, 392 F.Supp. 305 (N.D. Ohio 1974) ...............................................11

*Dixon v. City of Syracuse*,  493 F.Supp. 3d 30 (N.D.N.Y. 2020) ...............................25

*Goncalves v. Reynolds*, 189 F.Supp. 2d 278 (W.D.N.Y. 2001)...................................10

*Gray v. Erfe*, No. 3:13-CV-39, 2015 WL 3581230 (D. Conn. June 5, 2015).............10

*Harlow v. Heard*, 2019 U.S. District LEXIS 198886 (N.D.N.Y. 2019).....................30

*Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753  (S.D.N.Y. Mar. 31, 2006) .............................................................................................................................10, 15

*Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012) ..................23

*Kaid v. Akins*, No. 15-CV-1024, 2017 WL 4411955 (W.D.N.Y. Oct. 4, 2017)..........10

*Kayo v. Mertz*, 531 F.Supp. 3d 774 (S.D.N.Y. 2021) ..................................................24

*Manuel v. City of Joliet, Ill.*, 580  U.S. ___, 137 S.Ct. 911 (2017)............17, 18, 19, 20

*Manuel v. City of Joliet*, 903 F.3d 677 (7th Cir. 2018)................................................20

*McDonough v. Smith*, 2016 U.S. Dist. LEXIS 180207 (N.D.N.Y. 2016) .............24, 25

*McDonough v. Smith*, 139 S.Ct. 2149 (2019).........................................................24, 25

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) .........................................12, 13, 14, 22

*Parker v. City of New York*, No. 5 Civ. 1803, 2008 WL 110904 (S.D.N.Y. 2008) ...............................................................................................................16

*Perez v. Hewitt*, No. 04 Civ. 10112, 2008 WL 780628
S.D.N.Y. Mar. 24, 2008)........................................................................10

*Seabrook v. The City of New York*, No. 14CIV3059, 2016 WL 554823
(E.D.N.Y. Feb. 10, 2016).......................................................................24

*Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980)..................................29

*Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021) ....................................24, 25

*Syfert v. City of Rome*, 768 Fed.Appx. 66 (2d Cir. 2019)...........................17

*Walker v. Sankhi*, 494 Fed. Appx. 140 (2d Cir. 2012)................................10

*Wallace v. Kato*, 549 U.S. 384 (2007) ................................................16, 19

*Watson v. United States*, 865 F.3d 123 (2d Cir. 2017) ...............................17

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) .............................................29

*Wong v. LaPierre*, No. 8:07-cv-1110, 2011 WL 13248503 (N.D.N.Y. Mar. 23,
2011) ....................................................................................................10, 16

*Wright v. Kelley*, 1998 U.S. Dist. LEXIS 20424 (W.D.N.Y. 1998) ...........15

**Statutes:**

42 U.S.C. §1983 ...............................................................................1, 17, 29

New York State Penal Law §240.30 ...........................................................3

New York State Penal Law §240.32 ........................................................5, 8

## JURISDICTIONAL STATEMENT

This Court's jurisdiction is proper pursuant to 28 U.S.C. Rules 3(a)(1) and 4(a)(1)(A). The jurisdictional basis of the underlying action is 42 U.S.C. § 1983 in that Defendants, acting individually and in concert, under color of law, caused Plaintiff's false imprisonment and malicious prosecution, deprived him of a fair trial, falsified evidence, and conspired to commit the above acts. Plaintiff also asserts claims pursuant to *Monell*, and for other deprivations of Plaintiff's rights, privileges and immunities secured by the United States Constitution, including the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, and the laws of the United States. This action is also brought under 42 U.S.C. §1988 for the recovery of attorney's fees.

This appeal is taken from the Memorandum-Decision and Order of the Northern District of New York (Mae A. D'Agostino, J.) (A. 239-259) dated September 22, 2021, in the case of *Poulos v. County of Warren, et al.*, Civil Case No.: 1:21-cv-96 (MAD/CFH), which granted Defendants' motion to dismiss in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). A Notice of Appeal (A. 261) was timely filed on October 21, 2021. This Court issued a Notice of Expedited Appeal on November 17, 2021. By Order filed December 9, 2021, the Court granted Appellant's motion for removal from the Expedited Appeals Calendar and set a

briefing date of February 2, 2022, which was subsequently extended to February 11, 2022. This appeal has been timely filed.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Q 1.   Did the district court err in determining that the plaintiff did not suffer the deprivation of a liberty interest?

A 1.   Yes, the district court erred in determining that the plaintiff did not suffer the deprivation of a liberty interest.

Q 1A. Would plaintiff have been released on his own recognizance on the underlying charges had the false aggravated harassment charges not been brought?

A 1A. Yes, plaintiff would have been released on his own recognizance on the underlying charges had the false aggravated harassment charges not been brought.

Q 1B. Did the district court fail to take cognizance of Plaintiff's other liberty interests?

A 1B. Yes, the district court failed to take cognizance of Plaintiff's other liberty interests.

Q 2.   Did the district court err in determining that the false imprisonment claims were time-barred?

A 2.   Yes, the district court erred in determining that the false imprisonment claims were time-barred.

Q 3.   Did the district court err in determining that the malicious prosecution claim failed because plaintiff did not suffer deprivation of a liberty interest?

A 3.   Yes, the district court erred in determining that the malicious prosecution claim failed because plaintiff did not suffer deprivation of a liberty interest.

Q 4.   Did the district court err in determining that the claim for deprivation of a fair trial failed because plaintiff did not suffer deprivation of a liberty interest?

A 4.   Yes, the district court erred in determining that the claim for deprivation of a fair trial failed because plaintiff did not suffer deprivation of a liberty interest.

Q. 5   Did the district court err in determining that the claim for falsification of evidence failed because plaintiff did not suffer deprivation of a liberty interest?

A. 5   Yes, the district court erred in determining that the claim for falsification of evidence failed because plaintiff did not suffer deprivation of a liberty interest.

Q. 6   Did the district court err in determining that the conspiracy claims failed?

A. 6   Yes, the district court erred in determining that the conspiracy claims failed.

Q. 7   Did the district court err in determining that the *Monell* claim failed?

A. 7   Yes, the district court erred in determining that the *Monell* claim failed.

Q. 8   Did the district court err in denying leave to amend the complaint?

A. 8   Yes, the district court erred in denying leave to amend the complaint.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff was arrested in the Town of Queensbury, Warren County, New York on a four-year old warrant for aggravated harassment in the second degree (Penal Law §240.30) (the charges connected with same were subsequently dismissed due to unconstitutionality of the underlying Penal Code section), as well as drug charges, and remanded to the Warren County Jail on January 20, 2014. Plaintiff demanded a probable cause hearing and requested to testify before the Grand Jury concerning the drug charges. As a result of these requests, Plaintiff was harassed and retaliated against at the Warren County Jail, with methods including continually waking him from sleep and removing his blanket and exposing him, while poorly clothed, to

3

blasts of frigid air from an air-conditioning unit in front of his cell. In a desperate attempt to secure a warmer cell, Plaintiff clogged his toilet and flooded the cell. Plaintiff later needed to use the bathroom but was denied access to one, whereupon he was forced to go to the bathroom on the floor of his cell (A. 11-17), ¶¶ 18-54).

At this point, one of the Defendants, Sergeant Spring of the Warren County Sheriff's Department, informed Plaintiff that he was going to charge him with a felony, namely, aggravated harassment of an employee by an inmate, even though going to the bathroom on the floor of a cell does not constitute such an offense. Plaintiff was then moved to a different cell (A. 17, ¶ 54).

When the same retaliatory tactics were employed against Plaintiff in the new cell, he again clogged the toilet and went to the bathroom on the floor, hoping again to be transferred to a warmer cell. He was not. Instead, a conspiracy arose to concoct a false story and to fabricate inculpatory evidence and to destroy exculpatory evidence in an effort to claim that Plaintiff had kicked water admixed with urine and feces at two corrections officers (i.e., Defendants Charlene Maday and Dustin Spring), even though this never occurred (A. 19-22, ¶¶ 67-79).

To that end, and in furtherance of the conspiracy, the acts specified in the SAC (A. 8-52, especially at ¶¶ "40", "41-62", "65", "74", "76-77", "79", "82-86", "114-120", and "201-205") were committed, including framing Plaintiff; entrapping Plaintiff (by Defendants Sheriff's Department, District Attorney's and Burin);

harassing Plaintiff (by Defendants Sheriff's Department, District Attorney's Office, Perilli, Barrett Spring and Burin); subjecting Plaintiff to inhumane conditions (by Defendants Perilli, Barrett Spring, Dustin Spring and Hubbard); fabricating testimony (by Defendants Maday, Barrett Spring, Dustin Spring, Perilli and Hubbard); predetermining that felony charges would be brought (by Defendants Charlene Maday, Barrett Spring, Dustin Spring and Hatin); submitting false reports (by Defendants Barrett Spring, Dustin Spring, Maday, Perilli, Hatin and Hubbard); destroying exculpatory evidence (by Defendants Maday, Dustin Spring, Hatin and Barrett Spring); manufacturing inculpatory evidence (by Defendants Maday, Dustin Spring, Barret Spring, Hatin and Hubbard); giving false testimony (by Defendants Barrett Spring, Dustin Spring, Perilli, Maday, Hatin and Hubbard); securing false testimony (by Defendant Burin); and failing to properly investigate (by Defendants Sheriff's Department, District Attorney's Office and Hatin). Additionally, Defendants Warren County, Sheriff's Department and District Attorney's Office maintained a policy, practice and custom of, *inter alia*, violating and condoning violations of inmates' constitutional rights.

On January 24, 2014, Defendant Hatin of the Defendant Warren County Sheriff's Department initiated two false felony complaints against Plaintiff for alleged violations of Penal Law § 240.32 ("Aggravated harassment of an employee by an inmate") with the Queensbury Town Court, on which Plaintiff was arraigned

that day. Bail for the aggravated harassment charges was set so high that Plaintiff could not post bail, preventing him from being released from jail after the Court released him on his own recognizance ("ROR") on the drug charges on April 4, 2014 (A. 22-23, ¶¶ 78, 80).

Plaintiff was convicted of two counts of aggravated harassment of an employee on August 8, 2014. Plaintiff was sentenced on August 13, 2014, to two consecutive 2 ½ to 5-year terms of imprisonment, for an aggregate sentence of five to ten years, with over $5,000 worth of various fines and fees being imposed (A. 26-27, ¶¶ 90-91). On or about August 14, 2014, Plaintiff was again ROR'ed on the drug charges (A. 27-28, ¶ 94). On or about August 21, 2014, Plaintiff was transferred to state prison based solely upon his conviction for aggravated harassment (A. 27-28, ¶ 94). He would not be tried and convicted of the drug charges until May 2016 (A. 29, ¶¶ 102-103).[1]

Therefore, between April 4, 2014, the date Plaintiff would have been released on the drug charges but for the pending aggravated harassment charges, through his May 2016 conviction on the drug charges, Plaintiff was imprisoned for at least 22

---

[1] Plaintiff received a thirty-year sentence and has appealed his conviction. Furthermore, Plaintiff received this enhanced sentence on the drug charges due to his now-overturned conviction for the alleged aggravated harassment of Defendants Charlene Mayday and Dustin Spring.

months solely due to the fabricated aggravated harassment of an employee charges that are at issue in this matter.[2]

Then, in a unanimous decision dated November 23, 2016, the Appellate Division, Third Department, reversed Plaintiff's convictions for aggravated harassment of an employee by an inmate, remanding the matter back to the Warren County Court for a new trial. The Appellate Division held that Plaintiff had been deprived of his right to proceed *pro se* at trial, and that a missing evidence charge should have been given (A. 30, ¶ 105). Plaintiff was subsequently acquitted of the fabricated aggravated harassment of an employee charges at a second trial on January 29, 2018 (A. 30, ¶ 108).

In the Memorandum-Decision and Order of the Hon. Mae A. D'Agostino (N.D.N.Y.) from which this appeal is taken (the "Decision") (A. 239-259), the Court granted Defendants' Motion to Dismiss in its entirety, including claims for false imprisonment, malicious prosecution, deprivation of the right to a fair trial,

---

[2] There is some uncertainty whether Plaintiff's ROR on the drug charges was continuous from April 4, 2014 to August 14, 2014 was continuous or was on a stop-start basis. However, it is certain that from August 14, 2014, the date of the second ROR on the drug charges, until May 2016, when he was convicted of the drug charges, he was confined solely due to the false aggravated harassment charges. Therefore, it is stated at all times below that he was deprived of a liberty interest for at least 22 months.

falsification of evidence, conspiracy, and *Monell* claims, and denied leave to amend the complaint. For the reasons stated below, this Decision must be reversed.

## ARGUMENT

The District Court erred in granting Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss the malicious prosecution, fair trial, falsification of evidence, conspiracy, and *Monell* claims in that the District Court failed to recognize that Plaintiff did indeed allege a deprivation of a liberty interest by pleading that he was incarcerated for 26 months and suffered several other non-detention deprivations of liberty interests. The Court also erred in erroneously calculating the limitation and accrual dates of the false imprisonment, fair trial, falsification of evidence, and conspiracy claims; and erroneously held that Plaintiff had not adequately pled a "meeting of the minds" regarding the conspiracy claim. The District Court, relying upon these errors as its rationale, erroneously denied leave to amend the complaint.[3]

---

[3] It should be noted as a preliminary matter that the name of Defendant Assistant District Attorney Matthew Burin was omitted from the caption of the District Court's Decision and Order. Also, District Court erroneously stated at p. 3 of its Decision and Order that "Plaintiff was then charged with a felony for aggravated harassment of an employee for going to the bathroom on the floor…." In fact, Plaintiff was not so charged until he was falsely accused of kicking water admixed with feces and urine at Defendants Charlene Maday and Dustin Spring. Merely going to the bathroom on the floor is not a violation of Penal Law §240.32. *People v. Polanco*, 2 A.D.3d 1154, 770 N.Y.S.2d 167 (3d Dep't 2003).

## POINT I

## THE DISTRICT COURT ERRED IN DETERMINING THAT PLAINTIFF DID NOT SUFFER THE DEPRIVATION OF A LIBERTY INTEREST

A common theme throughout most of the District Court's decision is that Plaintiff did not suffer the deprivation of a liberty interest. In fact, this was either the sole reason or one of the reasons for the dismissal of all of Plaintiff's claims, including false imprisonment; malicious prosecution; denial of the right to a fair trial; falsification of evidence and spoliation; the conspiracy claims; and the *Monell* claims.

The basis for the holding that Plaintiff was not deprived of a liberty interest was that Plaintiff was already imprisoned and awaiting trial on the drug charges at the time the aggravated harassment of an employee charges were filed. It is respectfully submitted that this is incorrect.

A. Plaintiff would have been released on his own recognizance on the underlying drug charges had the false aggravated harassment charges not been brought.

The District Court overlooked and/or misconstrued the material and dispositive fact that Plaintiff had been released on his own recognizance for the drug charges 2 ½ months after the aggravated harassment charges were filed, and thus the only reason he remained imprisoned for the next at least 22 months was due to the aggravated harassment of an employee charges that are the subject of the instant matter.

Therefore, after April 4, 2014, the date that Plaintiff was released on his own recognizance on the drug charges, he was *not* in custody on any other charges, but only on the charges of aggravated harassment of an employee, concerning which charges a claim for deprivation of a liberty interest is made. This distinguishes the present case from *Gray v. Erfe*, No. 3:13-CV-39, 2015 WL 3581230 (D. Conn. June 5, 2015), *Walker v. Sankhi*, 494 Fed. Appx. 140 (2d Cir. 2012); *Kaid v. Akins*, No. 15-CV-1024, 2017 WL 4411955 (W.D.N.Y. Oct. 4, 2017); *Wong v. LaPierre*, No. 8:07-cv-1110, 2011 WL 13248503 (N.D.N.Y. Mar. 23, 2011); *Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753 (S.D.N.Y. Mar. 31, 2006); *Goncalves v. Reynolds*, 189 F. Supp. 2d 278 (W.D.N.Y. 2001), and *Perez v. Hewitt*, No. 04 Civ. 10112, 2008 WL 780628 (S.D.N.Y. Mar. 24, 2008), all cases cited in Judge D'Agostino's Decision in which the plaintiff actually *was* already in custody on other charges. The Plaintiff did in fact serve additional time due to the fraudulent charges, from the day he was released on his own recognizance on the drug charges, April 4, 2014, until the day he was convicted on the drug charges, May 2016, a total of at least 22 months, in violation of the Fourth Amendment. The District Court therefore erroneously concluded that Plaintiff was in custody on other charges at the time of his arrest and prosecution, making all of the above cases cited inapplicable.

10

B.  The district court failed to take cognizance of Plaintiff's other liberty interests.

Aside from the additional time during which Plaintiff was incarcerated, it was also alleged that as a direct result of the initial conviction on the false aggravated harassment of an employee charges, Plaintiff was caused to incur over $40,000.00 in legal defense fees and was assessed approximately $5,000.00 in fines and fees against his inmate account[4], thus depriving him of a property interest, in violation of the Fourth Amendment. The District Court took no cognizance of this deprivation of a property interest whatsoever.

Further, due to the incarceration engendered by the conviction on the aggravated harassment charges, Plainitff suffered yet another deprivation of a liberty interest, that of pre-trial detainee. In *Cudnik v. Kreiger*, 392 F.Supp. 305 (N.D. Ohio 1974), it was noted that a pretrial detainee, who is innocent in the eyes of the law, retains all rights and liberties that his bailed counterpart enjoys except those necessarily lost due to the fact of his confinement, and that a pretrial detainee should not be subjected to punishment or loss in addition to loss of rights and liberties necessarily lost through fact of confinement. Such was not the case as to Plaintiff herein as he was charged and sentenced on the drug charges as a wrongfully

---

[4] As a result of the fines and fees assessed against his inmate account, all funds that were sent to him by family and friends while he was unlawfully incarcerated were seized and used to pay down his fines. This prevented Plaintiff from purchasing hygiene products from the commissary and stamps in order to communicate with his family.

convicted state prisoner rather than as a pretrial detainee. Further, because of this wrongful conviction, he was subjected to the much harsher and more restrictive conditions of the state prison system, as opposed to Warren County Jail, for approximately two years.

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) noted that the deprivation of *any* constitutional right suffered as a result of a criminal prosecution has Fourth Amendment relevance. In considering the question "whether the order that Murphy not leave the State of New York or the requirement that he attend court appointments constituted a "seizure" within the meaning of the Fourth Amendment," *Murphy* noted that:

> The Supreme Court has long recognized that a citizen's freedom to travel from state to state is a fundamental right that can properly be restricted only in the narrowest of circumstances. *See, e.g.*, *Shapiro v. Thompson*, 394 U.S. 618, 634, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969) (plurality opinion). "The nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land . . . ." *Id*. at 629. While the constitutional underpinnings of the right to travel "throughout the United States," [citation omitted] are perhaps not found solely in the Fourth Amendment itself (indeed, its roots have never been identified with particularity [citations omitted], the characterization of interstate travel as "a basic right under the Constitution," *id*. at 758, "occupying a position" fundamental to the concept of our Federal Union," *id*. at 757, is sufficient to demonstrate that restriction of that right as a result of a pending criminal proceeding is a restriction that has Fourth Amendment implications. As

the Supreme Court stated in *Albright*, "deprivations of liberty that go hand in hand with criminal prosecutions" have "Fourth Amendment[] relevance." 510 U.S. at 274 (plurality opinion) (citing *Gerstein v. Pugh*, 420 U.S. 103, 114, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975)).

*The liberty deprivations regulated by the Fourth Amendment are not limited to physical detention* [emphasis added]. In *Gerstein v. Pugh* . . ., the Court made plain that the liberties protected by that Amendment included the accused's freedom to travel while on pretrial release:

> Pretrial confinement may imperil the suspects job, interrupt his source of income, and impair his family relationships. . . *Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty*. See, *e.g.*, 18 U.S.C. §§ 3146(a)(2) . . . . 420 U.S. at 114 (emphasis added in *Murphy*).

As Justice Ginsburg observed, a

> defendant incarcerated until trial no doubt suffers greater burdens. That difference, however, should not lead to the conclusion that a defendant released pretrial is not still "seized" in the constitutionally relevant sense. *Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges*. He is equally bound to appear, and is hence "seized" for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court.

*Id*. at 279 (emphasis added [in *Murphy*]).

In sum, while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a

13

> properly accused citizen's constitutional right to travel
> outside of the state as a condition of his pretrial release,
> and may order him to make periodic court appearances,
> such conditions are appropriately viewed as seizures
> within the meaning of the Fourth Amendment. . . . We
> conclude that the restrictions imposed on Murphy
> constituted a seizure within the meaning of the Fourth
> Amendment.

Thus, *Murphy* made clear that deprivations of liberty interest aside from detention can be Fourth Amendment seizures. In the present case, the fines and fees, loss of pre-trial detainee status, and the ability of the prosecution to impeach Plaintiff at the subsequent drug charges trial with the record of his ill-gotten conviction are all similar non-detention deprivations, and of a much greater severity than the travel restrictions imposed upon a non-incarcerated defendant in *Murphy*. Despite having been pled in the SAC, the District Court took no notice of such deprivations, hastily concluding that no incarcerated individual can claim deprivation of a liberty interest. In doing so, it ignored *Murphy*, a landmark decision in its own circuit.

In keeping with *Murphy*, another liberty deprivation regulated by the Fourth Amendment is the effect that the interim conviction on aggravated harassment charges had at Plaintiff's trial on the prior drug charges. This resulted in his drug conviction in May 2016, *before* he was acquitted of the aggravated harassment charges at his second trial on January 29, 2018. Plaintiff was brought to trial on drug charges not as a free individual, as he would have been but for Defendants' malicious prosecution of Plaintiff for aggravated harassment and their fraud in securing the

14

initial conviction, but as a convict who, at the drug trial, was impeached by
Defendant ADA Burin with evidence of his conviction for the aggravated
harassment of Defendant Officers Mayday and Dustin Spring.

Additionally, there are District Court cases from this Circuit, where plaintiffs
who were inmates at the time of their malicious prosecutions were found to have
satisfied the Fourth Amendment element of their malicious prosecution claims. For
example, in *Allen v. City of New York*, 480 F.Supp. 2d 689 (S.D.N.Y. 2006), plaintiff
defeated a summary judgment motion on his malicious prosecution claim by raising
the issue of fact that, while he was already incarcerated in a federal facility, the
length of his incarceration was increased by his time in state custody awaiting
resolution of the state charges. The court in *Allen* distinguished cases such as *Holmes
v. Grant*, No. 03 Civ. 3426, 2006 WL 851753 (S.D.N.Y. Mar. 31, 2006) and *Wright
v. Kelley*, 1998 U.S. Dist. LEXIS 20424 (W.D.N.Y. 1998), stating "This is a very
different situation than one in which a plaintiff's period of incarceration is
lengthened. Incarceration, of any duration, represents a significant deprivation of
liberty, sufficient to implicate the Fourth Amendment." In the present case, while
Plaintiff also pled in the SAC that the incarceration on the false aggravated
harassment charges lengthened his overall period of incarceration, the District Court
took no notice of this fact. Additionally, Plaintiff was *not* otherwise incarcerated at
the time of his conviction for aggravated assault.

In *Wong v. LaPierre*, 2011 U.S. Dist. LEXIS 172767 (N.D.N.Y. 2011), a malicious prosecution claim was held to be sustainable where a conviction resulted in lengthening of plaintiff's incarceration, even though he was already incarcerated at the time of the malicious prosecution on new charges (*citing Parker v. City of New York*, No. 05 Civ. 1803, 2008 WL 110904 (S.D.N.Y. 2008) (noting that a malicious prosecution claim may exist where "the prisoner's period of incarceration was lengthened as a result of new charges brought against him while he was in custody"). Lengthening of one's sentence is yet another form of deprivation of liberty interest which, although plausibly pled, was ignored by the District Court.

## POINT II

### THE DISTRICT COURT ERRED IN DETERMINING THAT THE FALSE IMPRISONMENT CLAIMS WERE TIME-BARRED

Ordinarily, the date of accrual of a false imprisonment charge is the date that false imprisonment ends, generally, the date when the individual is held pursuant to legal process (*e.g.*, issuance of process or arraignment); however, the District Court ignored that here, with regard to the fabricated aggravated harassment of an employee charges at issue herein, Plaintiff was never held pursuant to *legal* process, since, as alleged, the charges were brought and the prosecution commenced and continued maliciously and based upon fabricated evidence. This set of facts distinguishes the present matter from *Wallace v. Kato*, 549 U.S. 384 (2007) and

*Watson v. United States*, 865 F.3d 123 (2d Cir. 2017). Thus, the accrual date coincides with the date of favorable outcome to the Plaintiff, *i.e.*, his acquittal at the second trial on January 29, 2018. As this action was commenced on January 27, 2021, it is certainly timely. The statute of limitations for 42 U.S.C. §1983 claims in New York is three years. *Syfert v. City of Rome*, 768 Fed.Appx. 66 (2d Cir. 2019).

This very issue was discussed by the District Court below in *Butler v. Hesch*, 286 F. Supp. 3d 337 (N.D.N.Y. 2018), in which it had occasion to discuss *Manuel v. City of Joliet, Ill.*, 580 U.S. ___, 137 S.Ct. 911 (2017), a case in which a judge found probable cause based upon the criminal complaint, which in turn was based upon evidence fabricated by the police. *Butler* summarized plaintiff's argument for the applicability of *Manuel* in the case before it:

> In *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017), which itself involved the statute of limitations, the Court discussed the situation where probable cause is based on fabricated evidence, stating: "Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim . . . ." *Id.* at 918-19. In such a circumstance, the Court held that a Fourth Amendment claim is appropriate both for the pre-judicial and post-judicial detention because "the judge's order holding the [plaintiff] for trial therefore lacked any proper basis." *Id.* at 919. The Court further stated that, subject to the statute of limitations, the plaintiff could maintain claims for both "wrongful arrest" and "wrongful detention." The Court characterized the entire action as a "Fourth Amendment claim," . . . and remanded

17

the matter for the determination of whether the statute of limitations should begin to run upon presentation to the magistrate or upon the favorable termination of the prosecution.

While the Northern District did not find *Manuel* applicable in the *Butler* case, in the matter before the court, as in *Manuel*, Plaintiff was never "bound over" or held pursuant to legal process because there *was no* legal process. The determination of probable cause was vitiated and nullified because it was based upon manufactured and otherwise tainted evidence, as alleged in the SAC at ¶¶ "126", "143" and "198."

The Supreme Court stated in *Manuel* itself that:

> [P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. *See supra*, at ____, 197 L. Ed. 2d, at 320. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. *See* 590 Fed. Appx., at 643-644. If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.

18

For that reason, and contrary to the Seventh Circuit's view, Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention. . . . Manuel's subsequent weeks in custody were *also* unsupported by probable cause, and so *also* constitutionally unreasonable. . . . The judge's order holding Manuel for trial therefore lacked any proper basis. And that means Manuel's ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights. Or put just a bit differently: Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime.

According to Manuel, that Fourth Amendment claim accrues only upon the dismissal of criminal charges— here, on May 4, 2011, less than two years before he brought his suit [referring to the Illinois statute of limitations]. See Reply Brief 2; Brief for United States as *Amicus Curiae* 24-25, n. 16 (taking the same position). Relying on this Court's caselaw, Manuel analogizes his claim to the common-law tort of malicious prosecution. See Reply Brief 9; *Wallace,* 549 U. S., at 389-390, 127 S. Ct. 1091, 166 L. Ed. 2d 973. An element of that tort is the "termination of the . . . proceeding in favor of the accused"; and accordingly, the statute of limitations does not start to run until that termination takes place. *Heck*, 512 U.S., at 484, 489, 114 S. Ct. 2364, 129 L. Ed. 2d 383. Manuel argues that following the same rule in suits like his will avoid "conflicting resolutions" in §1983 litigation and criminal proceedings by "preclud[ing] the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution." *Id.,* at 484, 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383; see Reply Brief 10-11; Brief for United States as *Amicus Curiae* 247-25, n. 16. In support of Manuel's

position, all but two of the ten Courts of Appeals that have recognized a Fourth Amendment claim like his have incorporated a "favorable termination" element and so pegged the statute of limitations to the dismissal of the criminal case. See n. 4, *supra*. That means in the great majority of Circuits, Manuel's claim would be timely.

For the reasons stated, we reverse the judgment of the Seventh Circuit and remand the case for further proceedings consistent with this opinion.

On remand, the Seventh Circuit Court of Appeals held that a pretrial detainee's action, claiming that his detention without probable cause violated the Fourth Amendment, was timely because the wrong of detention without probable cause continued for the duration of the detention, and the claim accrued when the detention ended. *Manuel v. City of Joliet*, 903 F.3d 677 (7th Cir. 2018).

Thus, in the instant matter, as in *Manuel*, the accrual date for the false imprisonment claim becomes the same as that for the malicious prosecution claim (i.e., January 29, 2018), and thus the cause of action for false imprisonment was also brought within the three-year limitations period. Curiously, the court below did not address *Manuel* in its Decision.

As argued above in "Point I," Plaintiff was *not* in custody on other charges, since he had been released on his own recognizance on the drug charges on April 4, 2014. The sole reason for his continued incarceration was the false aggravated harassment of an employee charges.

**POINT III**

**THE DISTRICT COURT ERRED IN DETERMINING THAT THE MALICIOUS PROSECUTION CLAIM FAILED BECAUSE PLAINTIFF DID NOT SUFFER DEPRIVATION OF A LIBERTY INTEREST**

As stated above, the District Court overlooked and/or misconstrued the material and dispositive fact that Plaintiff had been released on his own recognizance on the drug charges, and that the only reason he remained incarcerated was due to the fabricated aggravated harassment of an employee charges that are the subject of the instant matter. This oversight resulted in the determination of the District Court that the malicious prosecution claim must be dismissed due to lack of deprivation of a liberty interest.

Further, the District Court's statement at p. 10 of its Decision (A. 248) that "Plaintiff claims that prior to his conviction and facing the charges for aggravated harassment of an employee, he was in prison based on his drug charges. *Id*. [Dkt. No. 11] at ¶¶ 26, 28, 80" is incorrect. Dkt. No. 11 (the Second Amended Complaint (SAC)) (A. 12) stated at ¶ 26 that "Plaintiff was arraigned on drug charges. He demanded a probable cause hearing and requested to testify on his own behalf at the Grand Jury. He voiced complaints on the record in Court detailing the aforesaid unlawful behavior of the officers." The SAC at ¶ 28 (A. 12) stated that "Plaintiff was incarcerated at the Warren County Jail pending trial." The SAC at ¶ 80 (A. 22-23) stated that "Plaintiff was immediately arraigned on the new felony complaints written

by Defendant HATIN and prohibitively high bail was set for the new charges, preventing Plaintiff from being able to be released on the drug charges. Plaintiff served the DAO with a notice that he wished to testify on his own behalf at the Grand Jury for these new and contrived charges."

The SAC went on to state at ¶ 89 (A. 26) that "At this point, Plaintiff had still not been indicted in the drug possession case. A preliminary hearing was scheduled in that matter for April 4, 2014. Since Defendant BURIN refused to appear for the hearing, Plaintiff was released on his own recognizance on the drug possession charges." Reading these passages *in pari materia*, it becomes clear that Plaintiff was not "in prison based on his drug charges," but rather remained incarcerated because of the false aggravated harassment charges. Therefore, Plaintiff did suffer a deprivation of a liberty interest from April 4, 2014, the date of his release on his own recognizance for drug charges, until his conviction on the drug charges in May 2016, a period of over two years. These facts also contradict the conclusion of the District Court at p. 10 of its Decision that Plaintiff did not serve additional time because of the false aggravated harassment charges. *See Murphy, supra.*

## POINT IV

## THE DISTRICT COURT ERRED IN DETERMINING THAT THE CLAIM FOR DEPRIVATION OF A FAIR TRIAL FAILED BECAUSE PLAINTIFF DID NOT SUFFER DEPRIVATION OF A LIBERTY INTEREST

Here again, while finding no other fault with Plaintiff's claim for deprivation of a fair trial, and having made no finding that any of the other elements of this claim were lacking (*see Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012)), the District Court again erroneously concluded that there was no deprivation of a liberty interest to support this claim because Plaintiff was incarcerated on other charges, which, as demonstrated above, was incorrect.

The statement by the District Court at pp. 12-13 of its Decision (A. 250-251) that "Again, Plaintiff cannot establish a deprivation of liberty because he was already incarcerated at the time of the alleged incident and has remained there even following his acquittal. Dkt. No. 11 at ¶ 96" is incorrect and misconstrued. In para. 96 of the SAC (A. 28), Plaintiff alleged that "Plaintiff was transferred to the custody of the New York State prison system on August 21, 2014, where he has remained ever since." While it was true that Plaintiff was sent to state prison on August 21, 2014, this was for the conviction on the aggravated harassment charges, for which he was subsequently acquitted. It was not until May 2016 that Plaintiff was convicted of the drug charges, which conviction accounted for his continued stay in state prison. Again, as fully explained above, but for the false aggravated harassment

charges and conviction, Plaintiff would not have been incarcerated between April 4, 2014 and May 2016. This distinguishes the instant matter from *Seabrook v. The City of New York*, No. 14CIV3059, 2016 WL 554823, (E.D.N.Y. Feb. 10, 2016).

As to the District Court's holding that Plaintiff's deprivation of a fair trial claim accrued in April 2014 and expired in April 2017 and is thus time-barred, this holding is at odds with that of the United States Supreme Court in *McDonough v. Smith*, 139 S.Ct. 2149 (2019), which held that a deprivation of fair trial claim "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." In so holding, the Supreme Court reversed the decision of the very same Northern District judge who authored the Decision in the instant matter (*McDonough v. Smith*, 2016 U.S. Dist. LEXIS 180207 (N.D.N.Y. 2016)). Oddly, the District Court failed to recognize a United States Supreme Court decision that reversed it on this very issue a mere two years ago. Even the Defendants did not dispute this point in their Memorandum of Law in Opposition.

As stated in *Kayo v. Mertz*, 531 F.Supp. 3d 774 (S.D.N.Y. 2021):

> [M]ost "courts in this Circuit read *McDonough* to require favorable termination in fair trial claims that allege a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding." *Corso v. Calle-Palomeque*, No. 17 Civ. 6096 (NRB), 2020 U.S. Dist. LEXIS 91882, 2020 WL 2731969, at *7 (S.D.N.Y. May 26, 2020) (quotations and citation omitted) (collecting cases); *see also Gondola v. City of New York*, No. 16 Civ. 369 (AMD) (SJB), 2020 U.S. Dist. LEXIS 50972, 2020 WL 1433874, at *4 (E.D.N.Y. Mar. 24, 2020); *Smalls v.*

*Collins*, No. 14 Civ. 02326 (CBA) (RML), 2020 U.S. Dist. LEXIS 52213, 2020 WL 2563393, at *3 (E.D.N.Y. Mar. 16, 2020); *Daniels v. Taylor*, 443 F. Supp. 3d 471, 478 (S.D.N.Y. 2020); *Goldring v. Donawa*, No. 16 Civ. 5651, 2019 U.S. Dist. LEXIS 161170, 2019 WL 4535507, at *4 (E.D.N.Y. Sept. 19, 2019); *Rosario v. City of New York*, No. 18 Civ. 4023, 2019 U.S. Dist. LEXIS 159771, 2019 WL 4450685, at *6 (S.D.N.Y. Sept. 16, 2019). *But see Miller v. Terrillion*, 436 F. Supp. 3d 598, 603 (E.D.N.Y. 2020) ("[T]he [*McDonough*] majority did not go as far as to impose wholesale a favorable termination requirement on all fair trial claims."). Although recognizing that *McDonough* is not conclusive on this point—directed as it was to a different, statute-of-limitations, issue—this Court joins this majority and reads *McDonough* to make favorable termination an element of fair trial claims.

A Northern District case, *Dixon v. City of Syracuse*, 493 F.Supp. 3d 30 (N.D.N.Y. 2020), noted that:

> The *McDonough* Court ultimately held that state law malicious prosecution claims were the closest analogy to a § 1983 claim alleging deprivation of a plaintiff's right to a fair trial for the purposes of determining when that § 1983 claim would accrue. *Id.* at 2154-59. By extension, the Supreme Court held that a right to fair trial claim for fabricated evidence only accrued upon the plaintiff's reaching a favorable result in the underlying criminal case. *Id.* at 2158.

Similarly holding was *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021).

It appears that the District Court ignored this entire line of cases in incorrectly deciding that the deprivation of a fair trial claimed was time-barred.

**POINT V**

**THE DISTRICT COURT ERRED IN DETERMINING THAT THE CLAIM FOR FALSIFICATION OF EVIDENCE FAILED BECAUSE PLAINTIFF DID NOT SUFFER DEPRIVATION OF A LIBERTY INTEREST**

For the same reasons as discussed repeatedly above, the District Court's dismissal of the claim for falsification of evidence on the ground that Plaintiff did not suffer a deprivation of a liberty interest is incorrect, as Plaintiff was incarcerated for over two (2) years and suffered the other liberty interest deprivations discussed in Point I(B) *supra* due to the fabricated aggravated harassment charges and falsification of evidence thereof.

**POINT VI**

**THE DISTRICT COURT ERRED IN DETERMINING THAT THE CONSPIRACY CLAIMS FAILED**

To the extent that the District Court rejected Plaintiff's conspiracy claims on the basis that he did not suffer deprivation of a liberty interest, it was in error for the same reasons as discussed above.

To the extent that the District Court rejected Plaintiff's conspiracy claims on the basis that the conspiracy claims were not adequately pled, it was in error. The District Court (A. 254) merely cited the SAC regarding the conspiracy claims as follows:

> Plaintiff merely states that "[u]pon information and belief, a plan was devised between Defendant SHERIFF, Defendant DAO and Defendant BURIN to harass, abuse,

26

frame, and entrap Plaintiff for new felony charges at the Warren County Jail on or about January 23, 2014, one day in advance of his scheduled testimony at the Grand Jury on January 24, 2014" and that Defendants "had a meeting of the minds to conspire amongst themselves to . . . falsely imprison, and maliciously prosecute Plaintiff, to falsify evidence and deprive him of a fair trial." Dkt. No. 11 at ¶¶ 40, 201.

This was not the totality of Plaintiff's allegations regarding the conspiracy.

For example, at ¶ 62 of the SAC (A. 18), it was stated that Defendant Dustin Spring stated, "hardly deserving of your new felonies Poulos," *before* the aggravated harassment charges were actually brought, demonstrating that a premeditated conspiracy to frame Plaintiff for allegedly kicking a mixture of urine and feces onto Defendants Dustin Spring and Maday (which Plaintiff never did) was already underway.

At ¶ 115 of the SAC (A. 31-32), it was alleged that "In furtherance of the conspiracy, cover-up, and malicious prosecution, each of the defendant officers and HATIN filed at least one false or intentionally misleading report *and were aware that the other defendant officers were fabricating reports* [emphasis added] in furtherance of the conspiracy, but withheld that crucial information, all in furtherance of the conspiracy to frame and maliciously prosecute Plaintiff and deprive him of a fair trial."

At ¶ 116 of the SAC (A. 32), it was alleged that "In furtherance of the conspiracy, cover-up and malicious prosecution of Plaintiff, none of the Defendant

officers truthfully reported what they did, saw and heard. Instead, *they convened amongst themselves* [emphasis added], and other agents, instrumentalities, officers and/or employees of Defendants COUNTY, SHERIFF, DAO and BURIN, among others, to fabricate a story to falsely justify the malicious prosecution of Plaintiff. Although the Defendant officers knew it was untrue at the time they made such claims, *they agreed* [emphasis added] to falsely report that Plaintiff's blanket had been taken by Defendant PERILLI because Plaintiff repeatedly used it to cover his head, that Plaintiff sought to get even by kicking urine, feces and toilet water onto Defendants MADAY (a/k/a CHARLENE WELLS) and CO SPRING, and that these Defendants laundered their allegedly soiled garments before Defendant HATIN arrived."

At ¶ 120 of the SAC (A. 33), it was alleged that "Defendant BURIN conspired with the other Defendants to maliciously prosecute Plaintiff and to cover up what actually occurred, suborned and willfully utilized perjured testimony and documents in furtherance of the malicious prosecution . . ."

It should be noted that since it was subsequently determined by the jury at the retrial that Plainitff did not kick contaminated water at the corrections officers, the fact that all of the corrections officers stated that he did is strong evidence that there was, of necessity, a meeting of the minds to concoct this story; otherwise, their stories would not have been identical.

It is respectfully submitted that the above statements adequately allege facts sufficient to show a meeting of the minds among Defendants "such that defendants entered into an agreement, express or tacit, to achieve the unlawful end" (*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003)) in a non-conclusory manner.

To the extent that the District Court rejected Plaintiff's conspiracy claims on the basis that they were time-barred, it should be noted that the purpose in bringing a conspiracy claim was not to circumvent any statute of limitations issues with the false imprisonment, malicious prosecution, deprivation of a fair trial, or falsification of evidence claims. Rather, it was brought as a viable independent claim.

The District Court briefly stated it basis for dismissing the conspiracy claims as time-barred by stating in fn. 4, p. 17 of its Decision (A. 255) that:

> This claim is also subject to dismissal on statute of limitations grounds, since all alleged overt acts occurred well beyond the three-year statute of limitations.

It is respectfully submitted that the date of occurrence of overt acts to a conspiracy are not determinative of the limitations period.

There is general agreement that the statute of limitations for a conspiracy claim under 42 U.S.C. §1983 is that of the underlying acts. As stated in *Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980):

> The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether that act is

labelled a tort or a violation of § 1983. *Korry v. International Telephone & Telegraph Corp.*, 444 F. Supp. 193 (S.D.N.Y. 1978). Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent.

Similarly holding is *Harlow v. Heard*, 2019 U.S. District LEXIS 198886 (N.D.N.Y. 2019).

The question necessarily arises, "When does the wrong become apparent?" In the instant matter, the compensable injury is loss of a constitutional liberty interest via false imprisonment, malicious prosecution, deprivation of a fair trial, and falsification of evidence. As has been demonstrated above, the injury "became apparent," that is, the harm was inflicted, only upon the termination of proceedings on the aggravated harassment charges in Plaintiff's favor on January 29, 2018. On this basis, the conspiracy cause of action is timely.

## POINT VII

### THE DISTRICT COURT ERRED IN DETERMINING THAT THE *MONELL* CLAIM FAILED

The District Court based its holding that Plaintiff's *Monell* claim failed upon the mistaken conclusion, as demonstrated on several occasions above, that "Plaintiff has failed to plead *Monell* liability because he has failed to plausibly allege a constitutional violation as they are all barred by the statute of limitations or fail on the merits. As a result, Plaintiff's *Monell* claims are dismissed." (A. 256). As

demonstrated above, there *was* a deprivation of a liberty interest, namely, the 26 months he was incarcerated solely due to the false aggravated harassment charges (as well as the other ancillary deprivations discussed above). As also demonstrated above, the claims for false imprisonment, deprivation of a fair trial, and falsification of evidence (as well as malicious prosecution, which claim the District Court did not find time-barred) are not time-barred; therefore, neither is the *Monell* claim.

## **POINT VIII**

## **THE DISTRICT COURT ERRED IN DENYING LEAVE TO AMEND THE COMPLAINT**

The District Court based its decision to deny leave to amend the complaint upon the premise that "Plaintiff's motion to amend is denied as any attempt to amend his complaint would be futile. Plaintiff's claims are dismissed as barred by the statute of limitations or on the merits." (A. 258). However, as demonstrated above, none of the claims should have been dismissed on the merits since Plaintiff did show the deprivation of a liberty interest in that, *inter alia*, he was incarcerated for 26 months due solely to the false aggravated harassment charges and, in the case of the conspiracy claim, did allege a meeting of the minds with adequate specificity. Plaintiff has demonstrated that, for the various reasons specified above, none of the claims were time-barred. Since the District Court's premise for denying leave to

amend the complaint has been eviscerated, so too must its decision to deny leave fall as well.

Further, as stated in Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss (A. 221), pursuant to *Buari v. City of New York*, 2021 U.S. Dist. LEXIS 61273 (S.D.N.Y. 2021), leave to amend also should have been granted because Defendants' pre-motion letter did not address the conspiracy claims.

## CONCLUSION

The District Court erred in granting Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. It failed to recognize that Plaintiff in fact had demonstrated a deprivation of a liberty interest by virtue of his incarceration for 26 months having been predicated upon the false aggravated harassment charges and failed to recognize several non-detention deprivations of a liberty and property interest as well. The Court erred multiple times in erroneously calculating the limitations and accrual dates of several of the claims, and erroneously held that Plaintiff had not adequately pled a "meeting of the minds" regarding the conspiracy claim. The District Court, using the above errors as a rationale, denied leave to amend the complaint.

For the foregoing reasons, this Court is respectfully requested to reverse the District Court's Memorandum-Decision and Order in its entirety and deny

Defendants' motion to dismiss in its entirety, and for such other and further relief that this Court deems just and proper.

Dated: Brooklyn, New York
      February 11, 2022

                                    Respectfully submitted,

                                    */s/ Philip M. Hines*
                                    Philip M. Hines

                                    *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   __X__ this document contains 8,154 words, or

   _____ this brief uses a monospaced typeface and contains [state the number of] lines of text

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   __X__ this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, or

   _____ this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

Dated: Brooklyn, New York
       February 11, 2022


                                        */s/ Philip M. Hines*_____
                                        Philip M. Hines

                                        *Counsel for Plaintiff-Appellant*

34

## CERTIFICATE  OF SERVICE

I hereby certify that one ( 1) copy of the following:

APPELLANT'S BRIEF AND APPENDIX ON APPEAL

was served upon Appellees' counsel of record via the Court's ECF System, as indicated, this 11th day of February, 2022, upon the following:


Date: February 11, 2022


*/ s / Philip M. Hines /*

_____

Philip M. Hines
*Attorney for Appellant*