# 21-2656

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

TYSON POULOS,

*PLAINTIFF – APPELLANT,*

**V.**

COUNTY OF WARREN, WARREN COUNTY SHERIFF'S DEPARTMENT, DUSTIN SPRING, CORRECTIONS OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHARLENE MADAY, CORRECTIONS OFFICER, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, MATTHEW HUBBARD, CORRECTIONS OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHRISTOPHER PERILLI, CORRECTIONS OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, BARRETT SPRING, SERGEANT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHRISTOPHER HATIN, INVESTIGATOR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, WARREN COUNTY DISTRICT ATTORNEY'S OFFICE, MATTHEW BURIN, ASSISTANT DISTRICT ATTORNEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

*DEFENDANTS – APPELLEES,*

**AND**

KATHLEEN HOGAN, WARREN COUNTY DISTRICT ATTORNEY, IN HER OFFICIAL CAPACITY,

*DEFENDANT.*

---

*On Appeal from the United States District Court for the Northern District of New York, Case No.: 1:21-cv-00096*

---

## BRIEF FOR DEFENDANTS - APPELLEES

---

JOHNSON & LAWS, LLC
*Attorneys for Defendants-Appellees*
646 Plank Road, Suite 205
Clifton Park, New York 12065
(518) 490-6428

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ......................................................... 1

COUNTER STATEMENT OF ISSUES PRESENTED FOR REVIEW ................. 3

STATEMENT OF FACTS ..................................................................... 4

SUMMARY OF THE ARGUMENT ....................................................... 9

STANDARD OF REVIEW .................................................................. 14

LEGAL ARGUMENT ....................................................................... 15

POINT I    AS THE DISTRICT COURT HELD, THE UNDISPUTED
FACT THAT PLAINTIFF WAS CONTINUOUSLY
INCARCERATED AT THE WCJ FROM JANUARY 20, 2014,
THROUGH AUGUST 21, 2014, MEANT THAT THE
AGGRAVATED HARASSMENT CHARGES DID NOT RESULT
IN ANY ACTIONABLE DEPRIVATION OF HIS LIBERTY
INTERESTS ....................................................................... 15

POINT II   THE DISTRICT COURT PROPERLY CONCLUDED
THAT PLAINTIFF'S FALSE IMPRISONMENT CLAIMS
WERE TIME-BARRED ....................................................... 23

POINT III  THE DISTRICT COURT PROPERLY CONCLUDED
THAT PLAINTIFF'S DEPRIVATION OF A FAIR TRIAL
CLAIM(S) IS LEGALLY INFIRM ......................................... 28

POINT IV  THE DISTRICT COURT PROPERLY CONCLUDED
THAT PLAINTIFF'S CONSPIRACY CLAIMS WERE
TIME-BARRED AND LEGALLY INFIRM ............................... 31

POINT V      THE DISTRICT COURT DISMISSED PLAINTIFF'S
             *MONELL* CLAIM AGAINST THE COUNTY ..................................34

POINT VI     THE DISTRICT COURT'S DISMISSAL OF THE
             COMPLAINT WAS ALSO WARRANTED BY THE
             IMMUNITY DOCTRINES APPLICALBE TO
             DEFENDANT'S ALLEGED-CONDUCT........................................35

                   A. Prosecutorial Immunity .......................................................35
                   B. Testimonial Immunity .........................................................38
                   C. Qualified Immunity .............................................................40

POINT VII    THE DISTRICT COURT PROPERLY EXERCISED
             ITS DISCRETION IN DENYING PLAINTIFF A
             FOURTH OPPORTUNITY TO ADEQUATELY PLEAD
             PAUSIBLE AND TIMELY CLAIMS .................................................42

POINT VIII PLAINTIFF'S "SUPPLEMENTAL BRIEF"......................................43

CONCLUSION ....................................................................................... 46

CERTIFICATE OF COMPLIANCE ...................................................47

APPENDIX OF UNPUBLISHED CASES ...........................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adanou v. Doyle,*
    707 F App'x 745 (2d Cir. 2018) ......................................................... 38

*Allen v. City of New York,*
    480 F. Supp. 2d 689 (S.D.N.Y. 2007) .......................................... 21, 22

*Alvarez v. Peters,*
    2022 U.S. Dist. LEXIS 16062 (E.D.N.Y. 2022) ................................ 22

*Arnold v. Geary,*
    582 Fed. App'x 42 (2d Cir. 2014) ...................................................... 21

*Arnold v. Geary,*
    No. 09 Civ. 7299, 2013 WL 4269388 (S.D.N.Y. 2013) ..................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... 14, 31

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................... 14

*Bobolakis v. DiPietrantonio,*
    523 Fed. Appx. 85 (2d Cir. 2013) ...................................................... 34

*Briscoe v. Lahue,*
    460 U.S. 325, 103 S. Ct. 1108 (1983) ............................................... 38

*Buari v. City of N.Y.,*
    530 F. Supp. 3d 356 (S.D.N.Y. 20201) ............................................. 42

*Buckley v. Fitzsimmons,*
    509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993) ............... 36

*Carey v. Piphus,*
    435 U.S. 247 (1978) .................................................................... 13, 20

*Coggins v. Buonora,*
    776 F3d 108 (2d Cir. 2015) ............................................................... 38

*Creighton v. City of New York,*
    2017 U.S. Dist. LEXIS 21194 (S.D.N.Y. 2017) .................................................. 22

*Cross & Cross Properties, Ltd. v. Everett Allied Co.,*
    886 F.2d 497 (2d Cir. 1989) .................................................................... 45

*Cuoco v. Moritsugu,*
    222 F.3d (2d Cir. 2000) ........................................................................ 37

*DeJesus v. City of New York,*
    55 F. Supp. 3d 520 (S.D.N.Y. 2014) ....................................................... 22

*Deshawn Banks v. Pinker,*
    2012 U.S. Dist. LEXIS 63958 (S.D.N.Y. 2012) ........................................ 22

*Dickerson v. Napolitano,*
    604 F.3d 732 (2d Cir. 2010) ................................................................. 18

*Dmy v. Ryan,*
    25 F.3d 81 (2d Cir. 1994) ..................................................................... 36

*Frost v. New York Cty. Police Dep't.,*
    980 F.3d 231 (2d Cir. 2020) ...................................................... 25, 29, 30

*Gallop v. Cheney,*
    642 F.3d 364 (2d Cir. 2011) ................................................................. 31

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ............................................................................. 20

*Goncalves v. Reynolds,*
    189 F. Supp. 2d 278 (W.D.N.Y. 2001) .................................................. 10

*Gray v. Erfe,*
    No. 3:13-CV-39, 2015 WL 3581230 (D. Conn. 2015) ............................ 11

*Green v. McLaughlin,*
    480 F. App'x 44 (2d Cir. 2012) ............................................................ 31

*Harper v. City of New York,*
    424 Fed. Appx. 36 (2d Cir. 2011) ......................................................... 34

*Hill v. City of New York*,
   45 F.3d 653 (2d Cir. 1995) ........................................................ 35, 36

*Holmes v. Grant*,
   No. 03 Civ. 3426, 2006 WL 851753 (S.D.N.Y. 2006) ................................. 10, 22

*Imbler v. Pachtman*,
   424 U.S. 409 (1976) ................................................................ 14, 36

*Jacobson v. Peat, Marwick, Mitchell & Co.*,
   445 F. Supp. 518 .................................................................... 45

*Jaegly v. Couch*,
   439 F.3d 149 (2d Cir. 2006) .......................................................... 18

*Kaid v. Akins*,
   No. 15-CV-1024, 2017 WL 4411955 (W.D.N.Y. Oct. 4, 2017) ......................... 11

*Lee v. Willins*,
   617 F.2d 320, 1980 US. App. LEXIS 19568 (2d Cir. 1980) ............................ 37

*Lynch v. Suffolk Cnty. Police Dep't, Inc.*,
   348 Fed. Appx. 672 (2d Cir. 2009) ................................................ 10, 11

*Manganiello v. City of New York*,
   612 F.3d 149 (2d Cir. 2010) .......................................................... 18

*Manuel v. City of Joliet, Ill.*,
   580 U.S. ___, 137 S.Ct. 911 (2017) ......................................... 25, 26, 27

*McDonough v. Smith*,
   139 S. Ct. 2149 (2019) ............................................................... 30

*Memphis Cmty. Sch. Dist. v. Stachura*,
   477 U.S. 299, 106 S. Ct. 2537 (1986) ..................................... 11, 12, 13, 20

*Morales v. City of N.Y.*,
   752 F.3d 234 (2d Cir. 2014) .......................................................... 31

*Murphy v. Lynn*,
   118 F.3d 938 (2d Cir. 1997) .......................................................... 19

*Murphy v. Lynn*,
    118 F3d 938 (2d Cir. 1997).................................................................. 18, 19

*Ormiston v. Nelson*,
    117 F.3d 69 (2d Cir. 1997)............................................................ 23, 28, 29

*People v. Poulos*,
    144 A.D. 3d 1389 (3rd Dep't. 2016) ........................................................ 8, 24

*Perez v. Hewitt*,
    No. 04 Civ. 10112, 2008 WL 780628 (S.D.N.Y. 2008) ................................... 10

*Phillips v. New York State*,
    2013 U.S. Dist. LEXIS 149215 (N.D.N.Y. 2013, No. 5:13-CV-
    00927 (DNH/TWD)) ............................................................................ 35, 36

*Pierson v. Ray*,
    386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) ................................... 22

*Pinaud v. County of Suffolk*,
    52 F.3d 1139 (2d Cir, 1995).................................................................... 43

*Rehberg v. Paulk*,
    566 U.S. 356 (2012) ........................................................................... 38

*Seabrook v. The City of New York*,
    No. 14CIV3059, 2016 WL 554823 (E.D.N.Y. 2016)........................................ 29

*Shamir v. City of NY*,
    804 F3d 553 (2d Cir. 2015).................................................................... 40

*Singer v. Fulton Cnty. Sheriff*,
    63 F.3d 110 (2d Cir. 1995)............................................................. 11, 12, 18

*Singer v. Fulton County Sheriff*,
    63 F3d 110 (2d Cir 1995)...................................................................... 20

*Singleton v. City of New York*,
    632 F.2d 185 (2d Cir. 1980)................................................................... 23

*Smalls v. Collins*,
    10 F.4th 117 (2d Cir. 2021)................................................................... 29

*Soomro v. City of New York*,
    174 F. Supp. 3d 806 (S.D.N.Y. 2016) ................................................. 29

*Thompson v. Sweet*,
    194 F. Supp. 2d 97 (N.D.N.Y. 2002) .................................................. 22

*Turkmen v. Ashcroft*,
    589 F.3d 542 (2d Cir. 2009) .............................................................. 14

*United States v. McFadden*,
    238 F.3d 198 (2d Cir. 2001) .............................................................. 40

*United States v. Salameh*,
    152 F.3d 88 (2d Cir. 1998) ................................................................ 40

*Verus Pharms., Inc. v. AstraZeneca AB*,
    427 F App'x 49 (2d Cir. 2011) ................................................... 15, 42

*Vippolis v. Village of Haverstraw*,
    768 F.2d 40 (2d Cir. 1985) ................................................................ 34

*Walker v. Sankhi*,
    494 F App'x 140 (2d Cir. 2012) ........................................... 16, 18, 21

*Walker v. Sankhi*,
    494 Fed. Appx. 140 (2d Cir. 2012) ...................................... 9, 11, 16

*Wallace v. Kato*,
    549 U.S. 384 (2007) .......................................................................... 23

*Watson v. United States*,
    865 F.3d 123 (2d Cir. 2017) .............................................................. 23

*Webb v. Goord*,
    340 F.3d 105 (2d Cir. 2003) .............................................................. 31

*Willis v. Rochester Police Dep't*,
    2018 U.S. Dist. LEXIS 166368 (W.D.N.Y. 2018) ........................... 22

*Wong v. LaPierre*,
    No. 8:07-cv-1110, 2011 WL 13248503 (N.D.N.Y. 2011) ................. 10

*Wynder v. McMahon,*
    360 F.3d 73 (2d Cir. 2004) ........................................................ 43

*Ying Jing Gan v. City of New York,*
    996 F.2d 522,530 (2d Cir. 1993) .............................................. 36

*Zalaski v. City of Hartford,*
    723 F.3d 382 (2d Cir. 2013) ...................................................... 40

**Statutes**

42 U.S.C. § 1983 ...................................................................... *passim*

**Other Authorities**

Second Amendment ............................................................................ 32

Fourth Amendment ...................................................................... *passim*

Fed. R. App. P. 32 .............................................................................. 47

Fed. R. Civ. P. 12 ..................................................................... 2, 3, 4

## JURISDICTIONAL STATEMENT

On January 10, 2017, twenty-nine (29) months after Plaintiff left the Warren County Jail (hereinafter "WCJ") to begin serving his 33-year sentence for felony drug charges on August 21, 2014, Plaintiff commenced his first action (9:17-cv-00026-TJM-CFH) by filing a pro se complaint against Warren County and thirty (30) different individual Defendants. (9:17-cv-00026 ECF No.1 pp.1—4). Plaintiff's 2017 action was dismissed by the District Court, *sua sponte*, on September 29, 2017. (9:17-cv-00026 ECF No. 7; A. 86-A. 136).

On January 27, 2021, six years and five months after Plaintiff left the Warren County Jail (hereinafter "WCJ") to begin serving his 33-year sentence for felony drug charges, Plaintiff commenced the present action (with the assistance of his former counsel) against seven individual Defendants and Warren County[1] by filing a complaint with the District Court. A.2. Three months later, on March 26, 2021, Plaintiff filed his second professionally drafted complaint in the present action. See, A.3 No.6. Two months later, on May 10, 2021—after the District Court conducted a pre-motion conference—Plaintiff filed his third professionally drafted complaint in the present action fashioned as his 'Second Amended Complaint", which became the operative pleading in this action (hereinafter "Complaint" or "SAC"). A.4 No.11.

---

[1] Also sued herein as "Warren County Sheriff's Department" and "Warren County District Attorney's Office" which are not distinct legal entities amenable to suit.

The Complaint advanced the following federal claims against Defendants, pursuant to 42 U.S.C. §1983: false imprisonment, malicious prosecution, deprivation of a fair trial based upon alleged falsification/spoilation of evidence, conspiracy, and a *Monell* claim against the County.

Following the District Court's pre-motion conference in April 2021, Defendants filed a Motion to Dismiss (hereinafter "MTD") Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure Rule 12, on June 1, 2021. A.53-A.173. After extensive briefing of the legal arguments raised by Defendants' MTD, including Plaintiff's attempts to file supplemental and sur-reply submissions (A.174-A.222; A.237-238), the District Court issued a Memorandum- Decision and Order granting Defendants' Motion to Dismiss on September 22, 2021 (A. 239-259). A final Judgement was issued by the District Court on the same date. A.260.

Plaintiff appealed the District Court's September 22, 2021, Decision and Order on October 21, 2021. A.261.

As Defendants demonstrate herein, the District Court's decision was clearly proper and was in accordance with well-settled precedent regarding the required elements for Plaintiff's constitutional claims, the accrual dates for Plaintiff's claims, the three-year statute of limitations applicable to Plaintiff's claims and the plausibility standard for review applicable to Plaintiff's third pleading in this action under Rule 12 of the F.R.C.P. While the District Court did not reach or have the need

to address all of the legal grounds for dismissing Plaintiff's Complaint that were presented by Defendant's MTD (e.g., prosecutorial immunity and testimonial immunity), there are additional legal bases compelling dismissal of the Complaint. Accordingly, the District Court's decision dismissing the Complaint should be affirmed.

## COUNTER STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether the District Court properly concluded that because Plaintiff has been continuously incarcerated since January 23, 2014, the subsequent criminal charges filed against him did not result in any actual deprivation of his liberty interests sufficient to support his false imprisonment claim ? **Yes.**

II.   Whether the District Court properly concluded that because Plaintiff has been continuously incarcerated since January 23, 2014, the subsequent criminal charges filed against him did not result in any actual deprivation of his liberty interests sufficient to support his malicious prosecution claim ? **Yes.**

III.  Whether the District Court properly concluded that because Plaintiff has been continuously incarcerated since January 23, 2014, the subsequent criminal charges filed against him did not result in any actual deprivation of his liberty interests sufficient to support his fair trial/fabrication of evidence claim(s) ? **Yes.**

IV.   Whether the District Court properly concluded that Plaintiff's Section 1983 claims were time-barred? **Yes.**

V.    Whether the District Court properly concluded that Plaintiff's Second Amended Complaint failed to sufficiently advance a plausible *Monell* claim against Warrant County ? **Yes.**

**VI.**   Whether the District Court properly concluded that Plaintiff's Second
Amended Complaint failed to sufficiently advance a plausible claim for
unlawful conspiracy ?  **Yes.**

**VII.**   Whether the District Court properly exercised its discretion to deny
Plaintiff's "request" for leave to file another (fourth) amended complaint,
based upon futility and Plaintiff's failure to file any cross-motion ?  **Yes.**

## STATEMENT OF FACTS

Since this appeal arises from the District Court's disposition of Defendants'

Rule 12(b) MTD, the following factual summary is derived from those facts that the

Court can take judicial notice of, and the facts that are apparent from the face of the

operative pleading in this action, which constitutes Plaintiff's fourth complaint

against most Defendants and his third complaint in this action. *See* NDNY ECF. No.

11 [A.8-A.52], referred to in Decision & Order as "SAC"; *see also*, 9:17-cv-00026

ECF No.1.

On January 20, 2014, Plaintiff was present with his female accomplice at a

Motel in Queensbury, New York where illicit drugs were recovered by the Narcotics

Enforcement Unit. A.11-A.12 ¶¶ 18-23; A.95-A.96. On January 20, 2014, Plaintiff

was arrested on the basis of an outstanding arrest warrant as well as felony charges

for drug possession and sale. A.65 & A.96. Plaintiff was remanded to the Warren

County Jail ("WCJ") on January 20, 2014, where he remained incarcerated for eight

months until August 21, 2014, when he was transferred to state prison following multiple criminal convictions and his thirty-year sentence on drug charges. A.12 ¶ 28; A.27 ¶ 91; A.28 ¶ 96; A.96. Since August 21, 2014, Plaintiff has been continuously incarcerated in state prison where his "Earliest Release Date" is August 18, 2041. A.65.

Plaintiff's Complaint contains a multitude of allegations purporting to explain or rationalize his vile behavior on January 23, 2014 (i.e., urinating and defecating in the WCJ cells he flooded and kicking contaminated fluids at WCJ staff) and conjuring up hypotheses about how his resulting criminal convictions were flawed. Many of the Complaint allegations are irrelevant to the claims Plaintiff advances and/or fail to support his liability claims. For example, the Complaint includes numerous allegations about the conditions of his 2014 confinement at the WCJ, yet the Complaint advances no claims regarding such conditions (presumably because Plaintiff's prior counsel knew that any such claims were time-barred, among other infirmities). A.8-A.52. Similarly, the Complaint includes numerous allegations about the circumstances of his January 20, 2014, arrest on drug charges and an outstanding warrant; yet Plaintiff did not sue any of the officers who arrested him on that date or investigated those charges. Despite Plaintiff's three progressively strategic series of pleadings in this action, the following undisputed facts can be gleaned from the four corners of the Complaint:

- On January 23, 2014, after being remanded to the WCJ based upon, *inter alia*, felony drug charges, Plaintiff clogged the drain and flooded his cell in the B-Pod housing unit. A. 16-18 ¶¶ 53-56, 61; Exs. A (A.58-A.62) & D (A.86-A. 136).

- On January 23, 2014, Plaintiff "went to the bathroom" on his flooded cell floor. A.16 ¶ 51, A.17 ¶ 54, A.97.

- On January 23, 2014, after Plaintiff was transferred to a different cell at the WCJ, Plaintiff flooded his cell a second time. A.17-A.18 ¶¶ 56, 61; A.60 & A.97.

- On January 23, 2014, after Plaintiff flooded his second cell, he again "went to the bathroom on the floor of the cell" a second time and then "began cutting his wrist on the desk inside his cell." A.18 ¶¶ 61, 63; A.97.

- As of January 24, 2014, Plaintiff was frustrated, if not irate, at the WCJ staff who he perceived to be harassing him. A.16 & A.18.

- On January 24, 2014, Plaintiff was charged with Aggravated Harassment for his January 23, 2014, conduct, wherein he was accused of causing the undisputedly contaminated water to be splashed at two WCJ Correction Officers. A.21-22 ¶¶ 77-78.

- Plaintiff was indicted by a Warren County Grand Jury on two counts for Aggravated Harassment for his January 23, 2104, conduct. A.26 ¶ 88.

- In January 2014, a Warren County Grand Jury indicted Plaintiff on the drug charges which initially prompted Plaintiff's January 20, 2014, arrest and incarceration at the WCJ. A.11; A.13 ¶ 30; A.95 fn. 4.

- On August 8, 2014, Plaintiff was convicted by a Warren County Jury on multiple counts of Aggravated Harassment for his January 23, 2014, conduct. A.26 ¶ 90; A.59 (judgment rendered August 13, 2014).

- In May 2016, Plaintiff was convicted by a Warren County Jury on multiple drug charges resulting in a 30-year sentence in state prison. A.30 ¶ 105; A.205; A.219.

Notably, Plaintiff has not sued any of the Judges who: remanded him to the WCJ, presided over the two Grand Juries that indicted him, conducted the two trials where he was convicted, or set what Plaintiff characterizes as "prohibitively high bail." A.26 ¶ 89. Yet, the Complaint includes a litany of provocative allegations regarding those judicial actions that the Defendants played no role in.

Plaintiff's curious description of the November 23, 2016, Decision by the Appellate Division of the New York Supreme Court, Third Department erroneously suggests to the Court that such ruling somehow supports the liability theories he is advancing in the instant action or retroactively nullified the probable cause that supported the indictments, prosecution, and conviction on the Aggravated

Harassment charges. See, *People v. Poulos*, 144 A.D. 3d 1389 (3rd Dep't. 2016); A.58-A.62. Yet, the Appellate Divisions November 2016 Decision actually:

• confirmed that in January 2014 Plaintiff "flooded his cell ...defecated and urinated on the cell floor." *Id.*, at 1390; A.60.

• rejected Plaintiff's argument that the indictment of Plaintiff on Aggravated Harassment charges was legally insufficient and concluded that as a matter of law his "act of kicking the water, and projecting same onto the corrections officers, constitutes 'expelling' the water within the embrace of the" penal code. *Id.*

• rejected Plaintiff's argument that his conviction on the Aggravated Harassment charges was against the weight of the evidence based on discrepancies in the testimony of WCJ staff. *Id.*, at 1390-91.

In fact, the only reversable error found by the Third Department was the trial Court's denial of Plaintiffs right to represent himself—or, more specifically, failing to conduct a thorough inquiry regarding Plaintiff's waiver of such right. *Id.*, at 1391-92. Ironically, as Plaintiff admits, on remand the same County Court conducted the inquiry required by the Third Department' s Decision and once again concluded that Plaintiff needed to have a criminal defense attorney assigned to conduct the second criminal trial. A.30 ¶¶ 106-107.

Notably, as to the significance of the decision by WCJ corrections staff to wash the uniforms after Plaintiff projected feces and urine-soaked toilet water at

them, the Appellate Division did not hold that such "laundry decision" constituted spoliation of evidence or anything illegitimate; rather the Court simply noted that on remand Plaintiff was entitled to a permissive adverse inference charge. A.61 at 1393.

As a result of the district court's review of these facts purported by Plaintiff—in the light mot favorable to him—after four separate pleading opportunities, the district court properly dismissed the Plaintiff's complaint.

## SUMMARY OF ARGUMENT

As described herein, the lower court correctly held that: Plaintiff's false imprisonment claim is time-barred, Plaintiff did not suffer an actual deprivation of liberty[2], Plaintiff failed to properly plead a constitutional violation, Plaintiff failed to properly plead a conspiracy claim, Plaintiff's conspiracy claim is time-barred, and Plaintiff failed to plead *Monell* liability because he has failed to plausibly allege a constitutional violation—as they are all barred by the statute of limitations or fail on the merits. The District Court additionally denied Plaintiff's request to amend his professionally drafted Complain a third time.

---

[2] As noted by the USDC NDNY: "Plaintiff does not claim that he was released from prison after he was acquitted on the two counts of aggravated harassment of an employee. Plaintiff also does not claim that he was able to afford the bail for his drug charges and was out on bail when he was arrested. Rather, the complaint makes clear that at all times before and after the accrual of his claims, Plaintiff was incarcerated. In fact, according to the DOCCS website, Plaintiff is currently serving a thirty-year sentence based on his convictions for the state drug offenses that brought him to the Warren County Jail, while awaiting trial on those charges. Plaintiff has therefore failed to allege a deprivation of liberty and fails to state a claim for malicious prosecution. *Walker*, 494 Fed. Appx. at 143." A.249.

The lower court correctly held that the Plaintiff does not have a claim for false imprisonment related to the aggravated harassment of an employee charges because he was undisputedly already in custody or incarcerated on other charges. A.245 citing *Wong v. LaPierre*, No. 8:07-cv-1110, 2011 WL 13248503, *8 (N.D.N.Y. Mar. 23, 2011); *Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, *14 (S.D.N.Y. Mar. 31, 2006) ("As plaintiff was already incarcerated at the time of the assault proceeding, he suffered no new seizure"); *Goncalves v. Reynolds*, 189 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) (holding that the plaintiff cannot maintain a claim for false arrest where he was already being detained pursuant to earlier charges and based upon his prior convictions); *Perez v. Hewitt*, No. 04 Civ. 10112, 2008 WL 780628, *2 (S.D.N.Y. Mar. 24, 2008) (noting that "inmates retain only a 'limited right to bodily privacy' under the Fourth Amendment" and dismissing the plaintiff's false arrest/imprisonment claim because, as an inmate, the plaintiff did "not have a reasonable expectation of privacy in his person"). Because Plaintiff did not suffer an actual deprivation of his liberty interests, he therefore cannot claim a constitutional violation. Alternatively, the Court specified, "Plaintiff's false imprisonment claims would have accrued in January 2014 when he was arraigned on the charges for aggravated assault of an employee. This is well beyond the three-year statute of limitations barring Plaintiff's false imprisonment claims." A.245 citing *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 Fed. Appx. 672, 675 (2d Cir. 2009).

As applied to the facts alleged in the Plaintiff's SAC, the Court clarified:

Plaintiff claims that prior to his conviction and facing the charges for aggravated harassment of an employee, he was in prison based on his drug charges. SAC. at ¶¶ 26, 28, 80. Plaintiff claims he remained in prison due to the high bail set for the aggravated harassment of an employee charges. Id. "Within this circuit, the law is clear that '[a] plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he already is in custody on other charges, because there is no deprivation of liberty interests.'" *Gray v. Erfe*, No. 3:13-CV-39, 2015 WL 3581230, *2 (D. Conn. June 5, 2015) (quoting *Arnold v. Geary*, No. 09 Civ. 7299, 2013 WL 4269388, *4 (S.D.N.Y. Aug. 16, 2013)); *Walker v. Sankhi*, 494 Fed. Appx. 140, 143 (2d Cir. 2012) (citing *Singer*, 63 F.3d at 116) ("Walker could not have suffered a deprivation of liberty as a result of the Bellamy burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted"). Similarly, if the plaintiff did not serve any additional time because of the allegedly fraudulent charges, the incarcerated plaintiff did not suffer a deprivation of liberty. *Kaid v. Akins*, No. 15-CV-1024, 2017 WL 4411955, *4 (W.D.N.Y. Oct. 4, 2017) (dismissing the plaintiff's malicious prosecution claims where the plaintiff was already in prison awaiting trial for unrelated charges and remained in prison pursuant to those charges after dismissal of the allegedly fraudulent charges).

A.248. The NDNY's reliance upon *Walker v. Sankhi*, 494 Fed. Appx. 140, 143 (2d Cir. 2012) and *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) requires a review of the Supreme Court ruling in *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537 (1986), which supplies the basis for the N.D.N.Y. holding that the Plaintiff has failed to plead a constitutional violation.

The Supreme Court in *Memphis* clearly established that compensation for constitutional injury cannot be premised upon abstract notions of "what *could* have happened" or "what *would* have been" nor a constitutional injury into an alternate reality. In this action, Plaintiff has repeatedly pled that after Defendant Burin did not appear at court proceedings regarding his pending felony drug charges, knowing that the Plaintiff was already incarcerated, Plaintiff "would" have been ROR'd on the drug charges *were it not for* the aggravated harassment charges and the bail set. In other words, Plaintiff argues a "hypothetical liberty deprivation" by speculating about what *might have happened* had he not been charged with Aggravated Harassment. As such, the lower court properly concluded that Plaintiff failed to establish that he did, in fact, suffer a compensable deprivation of his liberty. *Singer*, 63 F.3d 110, 116 (2d Cir. 1995) ("'the abstract value of a constitutional right may not form the basis for § 1983 damages'... Rather, an award of 'damages must always be designed "to *compensate injuries* caused by the [constitutional] deprivation . . .."'") citing *Memphis* at 308 (1986). Plaintiff does not and cannot claim that he was released from prison after he was acquitted on the two counts of Aggravated Harassment of an Employee, nor does he claim that he was able to afford the bail for his drug charges and was out on bail when he was arrested. Plaintiff admits, however, that he could not post bail on the harassment charges. See, Plaintiff's Brief ECF No. 43 pp. 11. Applying the "what if…" logic of Plaintiff's surmising regarding ADA

12

Burin's perspective, had ADA Burin thought it prudent to waste taxpayer resources on attending Plaintiff's hearing, knowing that the Plaintiff was already incarcerated rendering him available for trial, Plaintiff may not have been ROR'd on the drug charges. Since Plaintiff was already undisputedly remanded to WCJ initially on the drug charges, and later on additional aggravated harassment charges, "detaining" him a second time on the drug charges would not have changed Plaintiff's circumstance as an incarcerated individual. The Supreme Court has made clear that the constitutional basis for a claim requires an *actual* injury: "…whatever the constitutional basis for § 1983 liability, such damages must always be designed 'to *compensate injuries caused* by the [constitutional] deprivation.'" *Memphis*, at 309 (1986) citing *Carey v. Piphus*, 435 U.S. 247 at 265 (1978). "Congress adopted this common-law system of recovery when it established liability for 'constitutional torts.' *Consequently, 'the basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" Id.* at 307-308, citing *Carey v. Piphus*, 435 U.S. 247, at 254 (1978) (emphasis added); see also *Carey*, at 257 ("damages awards under § 1983 should be governed by the principle of compensation"). Thus, in accordance with the well-settled precedent of the United States Supreme Court and this Court, the District Court properly dismissed Plaintiff's complaint for his failure to plead an underlying constitutional violation.

## **STANDARD OF REVIEW**

A Circuit Court of Appeals reviews *de novo* the grant or denial of a motion to dismiss a complaint for failure to state a claim. *See e.g., Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). A Complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678. The Supreme Court in *Ashcroft* concluded that a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *See id.*

As to the immunity grounds alternatively argued by Defendant, the Supreme Court has long recognized that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 418–19 n.13 (1976) (emphasis added). Accordingly, the District Court's ruling should alternatively be affirmed because Defendants are immune from suit for their prosecutorial functions and testimony.

As to the District Court's denial of Plaintiff's "request" for leave to file a fourth (or fifth) Complaint, this Court reviews such discretionary ruling for an abuse

of discretion. *Verus Pharms., Inc. v. AstraZeneca AB*, 427 F App'x 49, 55 (2d Cir. 2011) ("Plaintiff submits that the district court abused its discretion in failing to grant a request for leave to amend the complaint, a request plaintiff included on the final page of its brief in opposition to defendants' motion to dismiss and did not renew after grant of the motion... Our precedent clearly holds that a district court does not abuse its discretion in declining to address such informal requests for leave to amend.")

## LEGAL ARGUMENT

### POINT I

**AS THE DISTRICT COURT HELD, THE UNDISPUTED FACT THAT PLAINTIFF WAS CONTINUOUSLY INCARCERATED AT THE WCJ FROM JANUARY 20, 2014, THROUGH AUGUST 21, 2014, MEANT THAT THE AGGRAVATED HARASSMENT CHARGES DID NOT RESULT IN ANY ACTIONABLE DEPRIVATION OF HIS LIBERTY INTERESTS**

Plaintiff admits in his Complaint that he did not suffer an incremental deprivation of liberty consistent with a seizure. More specifically, Plaintiff was continuously a WCJ inmate between January 23, 2014, and August 21, 2014, every time he appeared in Court regarding his drug charges. As noted by the district court, Plaintiff does not and cannot claim that he was released from prison after he was acquitted on the two counts of aggravated harassment of an employee, nor does he claim that he was able to afford the bail for his drug charges and was out on bail

15

when he was arrested. A.249. "Rather, the complaint makes clear that at all times before and after the accrual of his claims, Plaintiff was incarcerated." A.249. "In fact, according to the DOCCS website, Plaintiff is currently serving a thirty-year sentence based on his convictions for the state drug offenses that brought him to the Warren County Jail, while awaiting trial on those charges. Plaintiff has therefore failed to allege an actual deprivation of liberty and fails to state a claim for malicious prosecution. *Walker*, 494 Fed. Appx. at 143." *Id.* Plaintiff and his former counsel cannot use this Court to replead Plaintiff's complaint, *for a fourth time*, to fabricate a deprivation of liberty based on Plaintiff's speculation about what *could* have happened: (a) had the Assistant District Attorney failed to appear for Plaintiff's hearing under a different set of circumstances and (b) had the Plaintiff not been charged with Aggravated Harassment of an Employee—for which he was indicted by a Grand Jury and later convicted. *Walker v. Sankhi*, 494 F App'x 140, 143 (2d Cir. 2012) ("Moreover, even if he could overcome the presumption of probable cause, Walker could not have suffered a deprivation of liberty…because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted.") The fallacy of Plaintiff's hypothetical "deprivation theory" is found in paragraph 89 of his operative complaint (SAC A.26) wherein he specifically alleges that on April 4, 2014, a date when Plaintiff admits he was incarcerated at the WCJ on other charges,

ADA "Burin refused to appear for" a hearing on his pending drug charges and as a result, Plaintiff was "ROR'd" on those charges. A.26. Obviously, had Plaintiff not been incarcerated on the date of that April 4, 2014 hearing, the prosecutor's office would have been facing an entirely different set of circumstances which would have prompted a different decision by the prosecutor's office (e.g., what is required to ensure Plaintiff remains incarcerated and/or prevents his flight). The undisputed fact is that Plaintiff's ongoing incarceration as of April 4, 2014, eliminated the need for the prosecutor's office to seek the court to (re)remand Plaintiff to jail and thus informed the prosecutor's decision-making process under the actual circumstances existing on that date. Plaintiff's hypothesis half a decade later that—hypothetically, had he not already been incarcerated, the prosecutor hypothetically would have made the same decision and the Court hypothetically would have the same ROR determination—is complete speculation and simply not a substitute for an actual liberty deprivation.

Plaintiff's "constitutional violation" allegations rest solely on the premises of speculation and hindsight by arguing that (1) *regardless* of the fact that he was initially remanded to the WCJ on the drug charges, which resulted in a conviction; (2) *regardless* of the fact that he continuously remained an inmate following his January 23, 2014 remand to WCJ; (3) *regardless* of the facts that Plaintiff admittedly flooded his cell *twice*, defecated on the floor *twice*, and purposefully cut his wrists

17

until Correction Officers gave him what he deemed "sufficient" attention,[3] and; (4) *regardless* of the fact that Plaintiff was indicted by a grand jury for aggravated harassment of an employee—since Plaintiff was acquitted after a second trial on the aggravated harassment charges, he suffered a deprivation of liberty because he was previously "ROR'd" on the drug charges (because ADA Burin did not attend a hearing).[4] This argument is baseless and illogical. *Walker*, 494 F App'x 140, 142 (2d Cir. 2012) ("To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims"); *See, e.g., Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (malicious prosecution); *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (false arrest); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure'").

---

[3] "Probable cause is a complete defense to any action for false arrest or malicious prosecution in New York." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)).

[4] Plaintiff additionally admits that he could not post bail on the harassment charges and that is what prevented him from being released on his own recognizance on the drug charges. See, Plaintiff's Brief Dkt No. 43 pp. 11. *Murphy v. Lynn*, 118 F3d 938, 944 (2d Cir. 1997) ("To the extent pertinent to this case, the Fourth Amendment protects against unreasonable 'seizures'…Further, since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings.")

Plaintiff relies on *Murphy v. Lynn* 118 F.3d 938 (2d Cir. 1997), to support vague and conclusory arguments of a liberty deprivation without acknowledging that "[n]o judicial proceedings preceded Murphy's arrest or detention." *Id.* at 945. Pertinent to this action, Plaintiff was lawfully incarcerated pursuant to a warrant and separate drug charges and was remanded to the Warren County Jail. *Murphy* does not support Plaintiff's conclusory arguments that he suffered Fourth Amendment violations due to "fines and fees, loss of pre-trial detainee status, and the ability of the prosecution to impeach Plaintiff." ECF No. 43 pp. 19. *Murphy*'s holding that an actual restriction of Plaintiff's freedom to travel implicated a constitutional liberty interest absolutely does not mean that Plaintiff's hypothetical detention scenario suffices to establish a deprivation of his constitutionally protected liberty interest. The Court in *Murphy* very clearly analyzed the actual restrictions placed on a pre-trial detainee regarding his freedom to travel outside the state. No part of the *Murphy* decision suggests or dictates that the Court in *Murphy* intended their analysis to make the grand leap from out-of-state-travel application for pre-trial detainees to fines, fees, or the ability of a prosecutor to lawfully impeach a Plaintiff who was previously incarcerated based upon a warrant and separate drug charges. Stated plainly, *Murphy* does not transform a property interest into a liberty interest, nor does it change the fact that Plaintiff failed to plead an actual deprivation of liberty in this action.

As *Singer v. Fulton County Sheriff*, 63 F3d 110, 116 (2d Cir 1995), cited by

Plaintiff, states:

> The Supreme Court has 'said that the accused is not 'entitled to judicial oversight or review of the decision to prosecute.' *Albright*, 114 S. Ct. at 813 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 118-119 (1975)). That pronouncement is consonant with the principle that **'the abstract value of a constitutional right may not form the basis for § 1983 damages**.' *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308, (1986). **Rather, an award of "damages must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation . . . .'"** *Id.* at 309 (quoting *Carey v. Piphus*, 435 U.S. at 265) (alteration in original).

*Id.* at 116 (emphasis supplied). Plaintiff's argument is precisely based upon the

abstract value of a constitutional right, a right that he *might* have had if the past

played out differently. However, Plaintiff has failed to and cannot establish a

compensable injury resulting from an actual deprivation of his liberty. Plaintiff's "if

only…" arguments would open the door to a plethora of claims based upon

speculation about alternative realities.

Using Plaintiff's "logic," a multitude of constitutional violations could be

alleged by inmates solely on the premise that, had any prosecutions, prosecutorial

decisions, or criminal proceedings unfolded differently, he/she might not have been

incarcerated and therefore they have *actually* been deprived of a liberty interest. If

this Court were to indulge Plaintiff's theory and not require an actual liberty

deprivation in order to support a claim under Section 1983, innumerable prisoners

could conjure up constitutional claims by looking back at the procedural histories leading to their convictions and sentences—including the prosecutorial decisions (e.g., not to pursue certain claims—including redundant claims; to not press certain arguments or appear at certain proceedings), and, through the very same type of speculation Plaintiff employs, concoct "theoretical deprivations" like the one Plaintiff urges upon this Court. Nonetheless, as for the allegations that were pled and viewed in the light most favorable to Plaintiff by the district court, the basis of "facts" for this appeal, Plaintiff failed to establish a deprivation of his liberty.

Plaintiff's reliance on the *Allen v. City of New York*, 480 F. Supp. 2d 689, 717 (S.D.N.Y. 2007) case as support for his malicious prosecution claim is also misplaced. Courts in this Circuit do not interpret the *Allen* case in the way that Plaintiff has. For example:

> Courts have held, for purposes of a malicious prosecution claim, that an inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses. *Allen v. City of New York*, 480 F. Supp. 2d 689, 717 (S.D.N.Y. 2007); *see also Arnold v. Geary*, 582 Fed. App'x 42, 42-43 (2d Cir. 2014); *Walker v. Sankhi,* 494 F. App'x 140, 143 (2d Cir. 2012) (holding that the plaintiff "could not have suffered a deprivation of liberty" as a result of the charge "because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate . . . charge, of which he was ultimately convicted"). Accordingly, Peters is entitled to summary judgment on Plaintiff's Section 1983 claim.

*Alvarez v. Peters*, 2022 U.S. Dist. LEXIS 16062, **8-9 (E.D.N.Y. 2022);

> On a separate front, as discussed, Plaintiff was already incarcerated on unrelated federal charges throughout the pendency of his state court prosecution. "Courts have held, for purposes of a malicious prosecution claim, that 'an inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses.'" *Allen v. City of New York,* 480 F. Supp. 2d 689, 717 (S.D.N.Y. 2007) (quoting *Holmes v. Grant,* No. 03 Civ. 3426 RJH RLE, 2006 U.S. Dist. LEXIS 15743, 2006 WL 851753, at *43-44 (S.D.N.Y. Mar. 31, 2006)). Plaintiff does not articulate a purported deprivation beyond that incarceration, and he fails to provide any details sufficient for the Court to infer an additional deprivation beyond his continued detention, which was already pursuant to the unrelated federal charges. See *Allen,* 480 F. Supp. 2d at 718; cf. *DeJesus v. City of New York,* 55 F. Supp. 3d 520, 523-24 (S.D.N.Y. 2014) (discussing Fourth Amendment seizures for incarcerated individuals in the false arrest context).

*Willis v. Rochester Police Dep't,* 2018 U.S. Dist. LEXIS 166368, **16-17

(W.D.N.Y. 2018);

> The eventual disposition of a criminal charge is likewise irrelevant to the probable cause determination for false arrest. *Allen v. City of New York,* 480 F. Supp. 2d 689, 711-12 (S.D.N.Y. 2007); *see also Pierson v. Ray,* 386 U.S. 547, 555-57, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967).

*Creighton v. City of New York,* 2017 U.S. Dist. LEXIS 21194, *66 (S.D.N.Y. 2017);

See also, *Deshawn Banks v. Pinker,* 2012 U.S. Dist. LEXIS 63958 **11, 14

(S.D.N.Y. 2012) (citing *Allen* for the general proposition that the lengthening of a

sentence could implicate the 4th Amendment but granting Defendants' MTD).  In

fact, the only case cited by the Magistrate Judge in the report and recommendation

issued in *Allen,* is *Thompson v. Sweet,* 194 F. Supp. 2d 97, 102 n.5 (N.D.N.Y. 2002).

The *Thompson* footnote cited in *Allen* is hardly sufficient to transform Plaintiff's

claims from a baseless action to meritorious one. Second Circuit and Supreme Court precedent make clear that the N.D.N.Y.'s decision was proper because the Plaintiff is required to plead an <u>actual</u> deprivation of liberty, consistent with a seizure, upon which relief may be granted. Regardless of the Plaintiff's many attempts to re-plead and supplement his brief with "facts" never pled and documents never placed before the district court, his SAC fails to plead a deprivation of his liberty.

## POINT II

### THE DISTRICT COURT PROPERLY CONCLUDED THAT PLAINTIFF'S FALSE IMPRISONMENT CLAIMS WERE TIME-BARRED

As accurately stated by the Northern District, while state law dictates the applicable statute of limitations, the accrual date of false imprisonment is a question of federal law that is not resolved by reference to state law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). A claim accrues "'when the plaintiff' knows or has reason to know of the injury which is the basis of his action.'" *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). "In short, a false imprisonment claim starts to run when a detainee begins to be held pursuant to legal process." *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017).

The District Court held that "*Plaintiff's false imprisonment claims would have accrued in January 2014 when he was arraigned on the charges for aggravated*

*assault of an employee. This is well beyond the three-year statute of limitations barring Plaintiff's false imprisonment claims.*" See A.245 fn. 2. Plaintiff argues that his assertion of § 1983 claims means that the "legal process" leading to his arrest and incarceration is somehow nullified. Plaintiff's argument conflates the existence of probable cause and "legal process" with his interpretation of his retrial and the Third Department's decision. Plaintiff's allegations that minor discrepancies in testimony, which have already been ruled upon by the Appellate Division, Third Department[5] somehow retroactively eviscerates the probable cause that undoubtedly supported his arrest, indictment, and first conviction on the aggravated harassment charges is simply erroneous. The alleged consistency, or lack hereof, in trial

---

[5] "Next, defendant maintains that the verdict was against the weight of the evidence in view of discrepancies in the testimony of the correction officers as to how the event occurred. There is no dispute here as to defendant's flooding and soiling the cell floor. Defendant's contention is that the evidence fails to establish that he kicked the water onto the clothing of the two correction officers. When, as here, a different result would not have been unreasonable, we consider the rational inferences that could be drawn from the testimony presented and view such testimony in a neutral light, giving due deference to the jury's credibility determinations. ... The pivotal question is whether or not the cell door was closed or open when defendant kicked the water, and, if the latter, to what degree. The gap between the door and the floor was 2⅛ inches. In the area outside of the cell, the officers had spread towels to block the flow of water down the hallway. Hubbard testified that defendant kicked the water toward Spring and Maday as they were backing out of the cell. On cross-examination, however, Hubbard was impeached by his grand jury testimony in which he stated that the cell door was closed behind the officers before the kicking began. Maday testified that the door was almost closed when defendant kicked the water, which came out from under the door, came over the towels and landed on the bottom half of her pants and boots as well as on Spring. A video of the incident, according to Maday, showed her looking down at her pants after the water hit her clothing. Weighing this testimony and giving due deference to the jury's credibility assessment, we cannot say that the verdict was against the weight of the evidence." *People v. Poulos*, 2016 NY Slip Op 07879, ¶¶ 2-3, 144 A.D.3d 1389, 1390-91, 43 N.Y.S.3d 148, 150-51 (App. Div. 3rd Dept.)(internal citations omitted).

24

testimony does not change the fact that probable cause existed in January 2014 and he was remanded to the WCJ by a judge pursuant to a legal process. The undisputed facts that: (a) Plaintiff was present in the WCJ; (b) urinated and defecated on the cell floor after flooding his cell (A.17 ¶54; A.18 ¶ 61); and (c) was frustrated and angry with the WCJ staff (A.16 & A.18 ¶ 63), most certainly gave rise to probable cause—which was later confirmed by his indictment and first conviction on the aggravated harassment charges. *See Frost v. New York Cty. Police Dep't.*, 980 F.3d 231, 242-244 (2d Cir. 2020).

Plaintiff attempts to use *Manuel v. City of Joliet, Ill.*, 580 U.S. ___, 137 S. Ct. 911 (2017) as a means of justifying his argument that the Second Circuit should change the accrual date of his false imprisonment claims. *Manuel* is inapplicable to this action. As a preliminary matter, Manuel was not lawfully incarcerated on other grounds, as opposed to the Plaintiff—who was incarcerated on a warrant and on drug charges. Moreover, whereas Manuel had subsequent affirmative drug tests that undermined his probable cause determination, Plaintiff in this action can only allege what he perceives as faulty credibility determinations of testimony by a Grand Jury and a Judge to allegedly undermine his probable cause determination. However, Plaintiff cannot avoid the facts that undermine his application of *Manuel*:

> ➢ Plaintiff admitted to flooding his cell *twice* in January of 2014;
> ➢ Plaintiff admitted to defecating on the floor *twice* in January of 2014;

> ➢ Plaintiff admitted to cutting his wrists on the desk until the Officers had to enter his cell;
> ➢ Plaintiff acknowledges he was frustrated and angry at WCJ Correction staff on January 24, 2014;
> ➢ the Appellate Division, Third Department's November 2016 Decision *confirmed* that in January 2014, Plaintiff flooded his cell, defecated, and urinated on the cell floor;
> ➢ The Appellate Division rejected Plaintiff's argument that the indictment of Plaintiff on Aggravated Harassment charges was legally insufficient and concluded that as a matter of law his act of kicking the water, and projecting same onto the corrections officers, constitutes 'expelling' the water within the embrace of the penal code;
> ➢ The Third Department further rejected Plaintiff's argument that his conviction on the Aggravated Harassment charges was against the weight of the evidence based on discrepancies in the testimony of WCJ staff.

Plaintiff's attempt to use *Manuel* to change the accrual rule is erroneous and ignores the undisputed facts contained within the four corners of his Complaint. Plaintiff's referral to minor discrepancies in testimony among Correction Officers does not support a "fabricated evidence claim" and more importantly does not alter the accrual of the statute of limitations applicable to his false imprisonment claim. Further, the Officers' decision to wash fecal infected uniforms is not plausibly a "fabrication" which falls within the definition of the word.

Plaintiff fails to clearly mention that the Supreme Court in *Manuel* remanded the accrual issue to the Seventh Circuit: "Here, the parties particularly disagree over the accrual date of Manuel's Fourth Amendment claim—that is, the date on which the applicable two-year statute of limitations began to run. The timeliness of Manuel's suit hinges on the choice between their proposed dates. But with the

following brief comments, we remand that issue to the court below." *Manuel* at 920

(2017). The Court further held:

> And in particular, the [Seventh Circuit] never confronted the accrual
> issue that the parties contest here. On remand, the Court of Appeals
> should decide that question, unless it finds that the City has previously
> waived its timeliness argument. And so too, the court may consider any
> other still-live issues relating to the contours of Manuel's Fourth
> Amendment claim for unlawful pretrial detention.

*Id.* at 922. *Manuel* only affirmatively held that "…contrary to the Seventh Circuit's

view, Manuel stated a Fourth Amendment claim when he sought relief not merely

for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial

detention," and as we have already established, the underlying facts are plainly

distinguishable from the facts of this case. *Id.* at 919. Plaintiff's reliance on *Manuel*

to "support" changing the accrual date of his claim because of the Seventh Circuit's

holding on remand is unpersuasive. In consistent fashion, Plaintiff argues that

"[w]hile the Northern District did not find *Manuel* applicable in the *Butler* case, in

the matter before the court, as in *Manuel*, Plaintiff was never 'bound over' or held

pursuant to legal process because there was no legal process." ECF No. 43 pp. 23.

The SAC clearly states that "[a] Grand Jury convened on the drug charges on or

about January 24, 2014." A. 13 ¶ 30. Plaintiff's argument ignores that Plaintiff was

arrested and incarcerated pursuant to a warrant and separate drug charges, was

remanded to Warren County Jail, indicted by a Grand Jury on the harassment charges

and the drug charges, and that the Appellate Division, Third Department, established

as a matter of law and fact—contrary to Plaintiff's nearly identical arguments before them regarding fabrication and perjury—that the indictment on the harassment charges was legally sufficient and that his conviction for the aggravated harassment charges was *not* against the weight of the evidence. Plaintiff's argument, at its core, conflates the constitutional claims of false imprisonment, deprivation of a fair trial, and malicious prosecution and further attempts to obfuscate the matter with his conspiracy claim.

Plaintiff argues in his supplemental brief that his counsel's "…brief…contained certain factual errors, inaccuracies, and/or mistakes, and other crucial omissions…" ECF No. 54-2 p.8. However, Plaintiff's *pro se* supplemental brief does not provide any meaningful clarifications material to this appeal.

The record before this Court, the very same considered in the light *most favorable to Plaintiff* in the NDNY—when separated from the speculation and surmising about what *could* have happened—does not present a deprivation of liberty within the three-year statute of limitations governing false imprisonment claims in this Circuit. *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

## POINT III

### THE DISTRICT COURT PROPERLY CONCLUDED THAT PLAINTIFF'S DEPRIVATION OF A FAIR TRIAL CLAIM(S) IS LEGALLY INFIRM

The district court correctly determined that Plaintiff's claim for a deprivation of a fair trial requires an actual deprivation of a defendant's liberty interests. A.250-

251, citing *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (citation omitted). The district court noted that:

> The inquiry as to causation is "whether the liberty deprivations that occurred are legally traceable back even further to [the] earlier investigatory act of fabrication." *Zahrey*, 221 F.3d at 352…. In other words, the claim only accrues "when fabricated information is forwarded to a prosecutor **and results in the deprivation of a defendant's liberty**." *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (citation omitted).

Id. (emphasis supplied).[6] Because the Plaintiff was *never* actually deprived of a liberty interest, the Plaintiff's alleged evidence fabrications do not support a claim for deprivation of his right to a fair trial. Plaintiff's two briefs attempt to use his retrial as a means of stating "factually" that his conclusory pleadings of allegedly false reports and perjury support his deprivation of a fair trial claim.

Plaintiff cannot establish a deprivation of liberty because he was already incarcerated at the time of the alleged incident and has remained incarcerated even following his re-trial, and he has therefore failed to establish a claim for deprivation of a fair trial. A.250-A.251 citing *Seabrook v. The City of New York*, No. 14CIV3059, 2016 WL 554823, *4 (E.D.N.Y. Feb. 10, 2016) (dismissing the plaintiff's malicious prosecution, excessive pre-arraignment detention, pre-

---

[6] Defendants recognize that this Circuit's recent decisions alter and/or clarify the accrual rules and "resolution requirements" applicable to due process claims for deprivations of fair trial rights based on fabrication of evidence. *See e.g., Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021); *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231 (2d Cir. 2020).

arraignment delay, and denial of a fair trial claims where the plaintiff was in prison as a pre-trial detainee at the time and remained in prison following the favorable determination based on his separate charges); *see also Frost*, 980 F.3d 231, 248-250 (2020). Plaintiff's attorney curiously asserts that Judge D'Agostino "failed" to account for *McDonough v. Smith*, 139 S. Ct. 2149 (2019). See, ECF No. 43 p. 29 ("Oddly, the District Court failed to recognize a United States Supreme Court decision that reversed it on this very issue a mere two years ago.") However, Judge D'Agostino cites directly to *McDonough* (2019) on page nine (9) of the district court decision and order. A.247. Furthermore, *McDonough* does not change the requirement that there be an underlying deprivation of a constitutionally protected liberty. *See generally, McDonough*, 139 S. Ct. 2149 (2019); *Frost*, at 248 & 250 (2020). Defendants fully incorporate by reference their analysis and application in Point I, *supra*, regarding the Plaintiff's inability to allege a deprivation of his liberty. As previously stated, because Plaintiff has repeatedly failed to plead facts plausibly indicating a deprivation of his liberty predicated on false information as opposed to Defendant Burin's decision to not attend a hearing, Plaintiff has not established that he was deprived of a fair trial. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) ("McDonough's claim, this theory goes, seeks to vindicate a 'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer.'") (internal citations omitted).

**POINT IV**

**THE DISTRICT COURT PROPERLY CONCLUDED
THAT PLAINTIFF'S CONSPIRACY CLAIMS
WERE TIME-BARRED AND LEGALLY INFIRM**

This Court has repeatedly confirmed the reasoning used by the district court to dismiss the Plaintiff's meritless conspiracy claims. *Morales v. City of N.Y.*, 752 F.3d 234, 237 (2d Cir. 2014) ("And even specific allegations of conspiracy, if conclusory, would not be sufficient to state a claim for conspiratorial violation of Morales's rights"); *Green v. McLaughlin*, 480 F. App'x 44, 46-47 (2d Cir. 2012) ("First, the district court correctly concluded that Green's allegations of a conspiracy were conclusory and insufficient to state a claim…Aside from his conclusory statement that there was a 'meeting of the minds' between the defendants, Green's complaint alleged no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights") [citing *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ( to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/or national origin" found conclusory); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a

31

single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators")]. The reasoning employed in the foregoing cases echoes the rationale used by the district court below.

Plaintiff's brief merely repeats the allegations in his Second Amendment Complaint and proceeds to make even larger conclusory jumps, unsubstantiated by the record, in an attempt to resuscitate his conspiracy claim. The Plaintiff acknowledges, however, that the statute of limitations begins to run (i.e., accrues) when the alleged conspiracy "became apparent," to Plaintiff which, as specifically pled in Plaintiff's SAC paragraph 81, occurred "when Plaintiff received Defendant CO SPRING's 'Victim Impact Statement' in April 2014...." A.23. Conveniently, however, in Plaintiff's brief he claims that he was not aware of the injury until the outcome of his retrial in 2018. Notably, Plaintiff was undisputedly aware of the alleged conspiracy when he initially brought his conspiracy claim in his 2017 action against the same defendants. A.68-A.83; A.104-A.107. Plaintiff disingenuously claims before this Court that he did not plead a conspiracy claim to circumvent the statute of limitations, however, Plaintiff fails to explain why he was unable or unwilling to clarify his claims for the N.D.N.Y. in accordance with their April 26, 2021 instruction to do so, even after his previous four separate pleading attempts.[7]

---

[7] Plaintiff's first federal complaint contained a similar attempt: "Plaintiff's complaint is replete with allegations that he was the victim of vast conspiracies to violate his constitutional rights in

Plaintiff's SAC and two appellate briefs conflate conspiracy claims with his other constitutional claims for false imprisonment, deprivation of a fair trial, and malicious prosecution. Plaintiff's vague and conclusory allegations do not plead an individual "meeting of the minds" for each set of conspiracies he alleges, i.e., (1) to concoct a plan to prevent Plaintiff from testifying before the grand jury on his drug charges in January of 2014 (i.e. by pumping cold air into his cell, preventing him from using a blanket, and forcing him to flood his cell and defecate on the floor), (2) to falsify reports that Plaintiff received in April of 2014, (3) to provide inconsistent testimony at the Grand Jury in January of 2014, (4) provide inconsistent testimony at his trial in August of 2014, and (5) to provide inconsistent testimony at his re-trial in January of 2018. His pleading implausibly alleges one conclusory "meeting of the minds" followed by a series of coincidental collateral acts, which were not plausibly conspired back in 2014 when the Plaintiff flooded his cell and defecated on the floor. See generally, SAC. Conspiracy is a distinct claim that is wholly separate from malicious prosecution, deprivation of a fair trial, and false imprisonment. The district court saw through the Plaintiff's repeated attempts to conjure conspiracy claims and correctly dismissed them.

---

which all of the defendants - governmental entities, county employees and private citizens - are alleged to have participated." A. 105-106.

## POINT V

## THE DISTRICT COURT PROPERLY DISMISSED
## PLAINTIFF'S *MONELL* CLAIM AGAINST THE COUNTY

Following this Court's precedent, the district court properly held that in order "to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and '(1) the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) "a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights."' *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985))." A. 256. The Plaintiff's "Second" Amended complaint fails to allege (1) a formal policy adopted by the County, (2) a policymaking official whose actions caused a violation of Plaintiff's constitutional rights, or (3) the existence of a permeated practice or custom among the County sufficient to put policymakers on notice. *Id.*

Furthermore, as previously demonstrated and as determined by the lower court, a *Monell* claim cannot survive where an underlying constitutional violation does not exist. A. 257 citing *Bobolakis v. DiPietrantonio*, 523 Fed. Appx. 85, 87 (2d Cir. 2013)) ("Plaintiff has failed to demonstrate the existence of an underlying

34

constitutional violation in the . . . Complaint, thereby precluding a *Monell* claim against the City").

## POINT VI

### THE DISTRICT COURT'S DISMISSAL OF THE COMPLAINT WAS ALSO WARRANTED BY THE IMMUNITY DOCTRINES APPLICABLE TO DEFENDANT'S ALLEGED CONDUCT

Alternatively, in accordance with Defendants' support for dismissal in the Northern District of New York, all individually named Defendants are entitled to immunity from suit for the alleged wrongs in the Plaintiff's Complaint. Although these arguments were not addressed in the district court's decision, Second Circuit precedent makes clear that none of the individual Defendants should be subject to suit under the doctrines of prosecutorial immunity, qualified immunity, and/or testimonial immunity.

#### A. Prosecutorial Immunity.

Plaintiff's claims against Burin are precluded by the doctrine of prosecutorial immunity. "Because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity." *Phillips v. New York State*, 2013 U.S. Dist. LEXIS 149215, at *10-13 (N.D.N.Y. Sep. 30, 2013, No. 5:13-CV-00927 (DNH/TWD)) (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). Applicability of absolute immunity,

according to the Second Circuit, is determined by a "functional approach, looking at the function being performed rather than to the office or identity of the defendant." *Id.* at *10 (citing *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)); *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). The Court in *Hill* clarified that:

> State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. *Id.* at 430-31; *Buckley*, 509 U.S. at 273. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *Buckley*, 509 U.S. at 273, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dmy v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

*Phillips*, 2013 U.S. Dist. LEXIS 149215, at *10 (2013). In the present case, each of the specific acts which Plaintiff's Complaint attributes to Burin plainly implicate prosecutorial functions. A.23-A.33 ¶¶ 82-84, 92-93, 110-111, & 120. Plaintiff's conclusory allegations of non-prosecutorial functions (A.33 ¶¶ 120-121) which are plainly designed to "plead around" immunity are patently insufficient. Similarly, Plaintiffs attempts to include recklessly defamatory allegations directed at Defendant Burin (e.g., accusing him of unethical and/or illegal conduct) to

circumvent Burin's right to prosecutorial immunity also fails as a matter of law under the broad scope of the prosecutorial immunity doctrine. *See Lee v. Willins*, 617 F.2d 320, 1980 US. App. LEXIS 19568 (2d Cir. 1980). Like the legally insufficient allegations included in Plaintiff's most recent version of his Complaint, the Court of Appeals in *Lee* affirmed the dismissal of similar allegations against a prosecutor holding:

> The complaint in the instant case alleges prosecutorial misconduct, including falsification of evidence, and the coercion of perjured testimony from a number of witnesses. But the injuries to [Plaintiff] that could result from these acts are, as his amended complaint states, the deprivation of his liberty for five years, his subjection to the ordeal of multiple trials, and the emotional and economic injury resulting therefrom. These are precisely the alleged injuries for which Imbler granted absolute immunity. Since appellees [prosecutors] are totally immune from suit for damages of this kind, the motion to dismiss was properly granted.

*Id*. at *6. Therefore, Plaintiff's claims against Defendant Burin are barred by absolute prosecutorial immunity and were properly dismissed. *Id*.

It is important to note that the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by an edited or better pleading. *Id*. (citing *Cuoco v. Moritsugu*, 222 F.3d 99 at 112 (2d Cir. 2000)). Plaintiff's repeated attempts to replead his case, along with the many alternative "realities" that Plaintiff alleges in an attempt to establish a claim, should not receive any

consideration by this Court. Thus, the district court properly dismissed all claims against ADA Burin.

## B. Testimonial Immunity.

As for the Plaintiff's allegations that support fair trial or malicious prosecution claims against the individual Defendants (other than Burin), such claims are precluded by the immunity afforded to testifying witnesses. As the Supreme Court held, "a grand jury witness, including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the witness' testimony,' even if that testimony is perjurious." *Coggins v. Buonora*, 776 F3d 108, 112 (2d Cir. 2015); *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). "The *Rehberg* Court thereby expressly extended to grand jury witnesses, including police officers, the same immunity that had previously been enjoyed by witnesses at trial." *Id.* In *Adamou v. Doyle*, this Court held that a Detective was entitled to absolute immunity from suit because: "Under *Rehberg v. Paulk*, ... a grand jury witness, including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the witness' testimony,' even if that testimony is perjurious." *Adanou v. Doyle*, 707 F App'x 745, 746 (2d Cir. 2018) (summary order). Similarly, public officials-such as the individual Defendants in this case (some of whom were the victims of Plaintiff's vile misconduct) are immune from suit under § 1983 for trial testimony as well. *Briscoe*

*v. Lahue*, 460 U.S. 325, 326, 103 S. Ct. 1108, 1110 (1983).[8] While Plaintiff's allegations about what state action the non-prosecutorial individual defendants took are unclear, at most the Complaint alleges that some of these individuals offered testimony which Plaintiff opines as improper. (A. 13 ¶¶33-38). As stated in footnote 5, *supra*, in response to the nearly identical allegations of perjury and spoliation of evidence that the Plaintiff made before the Appellate Division, Third Department, the Third Department determined as matter of law that the inconsistencies in testimony and the decision to wash fecal infected uniform pants were not sufficient to establish that he was convicted for aggravated harassment of an employee against the weight of the evidence. Plaintiff's conclusory allegations of perjury before the Grand Jury and at trial alleging "inconsistencies" makes clear that Plaintiff's claims against the Correction Defendants are based upon their testimony which entitles them to immunity. As such, the district court properly dismissed Plaintiff's

---

[8] "Immunity analysis rests on functional categories, not on the status of a defendant; a police officer on the witness stand performs the same functions as any other witness and he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury; to the extent that traditional reasons for witness immunity are less applicable to government witnesses, *other considerations of public policy support absolute immunity for such witnesses more emphatically than for ordinary witnesses; subjecting government officials, such as police officers, to damages liability under 42 USCS 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties since 1983 lawsuits against police officer witnesses, like lawsuits against prosecutors, could be expected with some frequency and could be very time-consuming, imposing significant burdens on the judicial system and on law-enforcement resources.*"

malicious prosecution and fair trial claims directed at the individual Defendants (other than Burin).

## C. Qualified Immunity.

The individual correction officers named are entitled to qualified immunity for the allegations alleged in Plaintiff's Second Amended Complaint. As this Court stated in *Shamir v. City of NY*, 804 F3d 553, 557 (2d Cir. 2015) states: "We agree that the Defendants are entitled to qualified immunity as a defense to the claim of false arrest...The District Court ruled that the police officers had probable cause, or at least 'arguable probable cause,' *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013), sufficient for qualified immunity." In determining arguable probable cause, if the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed, probable cause to arrest exists. *United States v. McFadden*, 238 F.3d 198, 204 (2d Cir. 2001) (citation omitted)). It is only the "fair probability," not a *prima facie* showing, of the basis for seizure that establishes probable cause." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

Plaintiff admits in his SAC that he flooded his cell *twice*, defecated on the floor *twice*, intentionally cut his wrists on the desk in order to be moved from his cell,[9] officers entered his cell where he had defecated on the floor, and Plaintiff repeatedly refused and/or failed to comply with officer commands. Moreover, Plaintiff's Complaint confirms Plaintiff was indicted and later convicted following a plenary trial for aggravated harassment for that conduct. In light of these admissions, undisputed facts, and of the ruling in the Appellate Division, Third Department, it is indisputable that the individually named Officers had arguable probable cause to charge the Plaintiff with aggravated harassment of an employee. Moreover, Plaintiff's allegations about inconsistencies in testimony, such as whether the Plaintiff used his left or right foot to kick the fecal infected water (See, A.19 ¶ 67), does not plausibly state that any of these correction officers "fabricated" their recounts in violation of any clearly established law resulting in a constitutional violation. Therefore, the individual Defendants are entitled to qualified immunity as a matter of law.

---

[9] SAC ¶ 63: "Plaintiff also began cutting his wrist on the desk inside of his cell, not due to any intention of self-harm but rather in the hope of being removed from the freezing cell."

## POINT VII

**THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING PLAINTIFF A FOURTH OPPORTUNITY TO ADEQUATELY PLEAD PLAUSIBLE AND TIMELY CLAIMS**

The Plaintiff's lack of justification to amend his Complaint, *for a fourth time*, should not be considered by this Court and was properly dismissed by the lower court. In *Verus Pharms., Inc. v. AstraZeneca AB*, 427 F App'x 49, 55 (2d Cir. 2011), which is factually specific to the present action, the Plaintiff submitted to this Court that "the district court abused its discretion in failing to grant a request for leave to amend the complaint, a request plaintiff included on the final page of its brief in opposition to defendants' motion to dismiss and did not renew after grant of the motion...." In response to same, this Court explicitly stated: "[o]ur precedent clearly holds that a district court does not abuse its discretion in declining to address such informal requests for leave to amend." *Id.* As such, Plaintiff's request was properly denied by the Northern District of New York. Plaintiff's reliance on *Buari v. City of N.Y.*, 530 F. Supp. 3d 356 (S.D.N.Y. 20201) is misplaced. The district court in that case stated:

> Buari's conspiracy claim, however, could benefit from further amendment. The factual allegations may suggest a conspiracy, but not one all-encompassing conspiracy, as Buari pleads. Furthermore, Defendants' pre-motion letter did not address the conspiracy claim, so Buari was not on notice of pleading deficiencies when he filed the Amended Complaint. Accordingly, the Court grants Buari leave to

amend only for the purpose of repleading and clarifying his conspiracy claim.

The pre-motion letter in this case was provided *before* the Plaintiff amended his complaint, for a second time, to include these new conspiracy claims on May 10, 2021. A.3-A.4 Nos. 7-11. However, on April 26, 2021, the Court put Plaintiff on notice by warning him that he must "clarify" *all* of his claims in his Complaint, when they additionally allowed him an opportunity to amend his complaint. A. 4. The Plaintiff's decision to disingenuously add conspiracy claims to circumvent the statute of limitations after the pre-motion letter was filed, does not mean that the district court erred in denying yet another opportunity to amend. The Plaintiff was well aware that his Complaint needed to be clarified, which he utterly failed to do.

## **POINT VIII**

### **PLAINTIFF'S "SUPPLEMENTAL BRIEF"**

Plaintiff's *pro se* supplemental submissions to this Court (ECF No. 54-2) do not warrant Plaintiff's late and disingenuous attempt to submit documents and allegations outside of the operative pleading and beyond the scope of this appeal and deprives the Defendants of notice and due process. *Wynder v. McMahon*, 360 F.3d 73, 80 n.11 (2d Cir. 2004) (At its core, "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given.")

Plaintiff's obsession with and fervent assertion that "favorable termination" is the "only tenable accrual date" for his "maliciously prosecute and conspiracy to deny fair trial claim (i.e., premised upon fabrication of evidence)" blatantly ignores the fact that he repeatedly failed to satisfy his duty to plead plausible facts establishing an actual deprivation of liberty. Moreover, Plaintiff may not plead around the statute of limitations using erroneous claims of conspiracy and fabrication, *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156-57 (2d Cir, 1995), which he has attempted to do repeatedly against these Defendants and others. See A.119. In January of 2014, after being arrested for selling heroin, Plaintiff admittedly acted in a vile and disruptive manner in the hopes of getting what he wanted. In consistent fashion, Plaintiff refuses to acknowledge the consequences of those vile actions—being that the officers who fell victim to his antics legitimately charged him with aggravated harassment of an employee. Plaintiff's allegations of subsequent fabrication, perjury, or falsification do not change the undisputed facts that the Plaintiff flooded his cell twice, defecated on the floor twice, intentionally cut his wrist on the desk to admittedly force the officers to enter his cell flooded with fecal-infected water, and that Plaintiff was angry and frustrated at the WCJ Correction staff. Plaintiff's attempts to misstate Judge D'Agostino's summarization of the facts pled in his complaint is not reason to undermine the district court's holding. See, ECF No. 43 p. 26 ("Further, the District Court's statement at p. 10 of its Decision (A. 248) that

'*Plaintiff claims that prior to his conviction and facing the charges for aggravated harassment of an employee, he was in prison based on his drug charges. Id. [Dkt. No. 11] at ¶¶ 26, 28, 80,*' is incorrect.") ADA Burin's discretionary decision not to attend a hearing on the drug charges (because he knew Plaintiff was being charged with aggravated harassment and would remain incarcerated), resulting in an ROR, does not serve as a "fact" to support a hypothetical liberty deprivation. Moreover, the SAC fails to include plausible factual allegations regarding an "enhanced sentence" as a result of the aggravated harassment charges—Plaintiff's earliest release date, according to the DOCCS website, is August 18, 2041. A.65.

Finally, Plaintiff's attempt to "supplement" his prior counsel's professionally drafted appellate brief with new documents, "facts," claims, and theories that were never before the district court must be rejected by this Court. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (holding "a party is not entitled to amend his pleading through statements in his brief"); *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2d Cir. 1989) (holding "factual statements contained in a party's brief are not a part of the record"). Plaintiff's sudden alleged "clarification" of his ROR dates or his "deprivation of property" claims are untimely and unpersuasive. Such claims are not ripe for review by this Court, not only because of their frivolity, but because they do not properly or lawfully belong in the record.

For the reasons stated herein, and for those properly held by the North District of New York, the Plaintiff's claims must be dismissed as a matter of law.

## **CONCLUSION STATING THE PRECISE RELIEF SOUGHT**

For all of the foregoing reasons, it is respectfully submitted that the decision and order of the District Court granting Defendants' motion to dismiss Plaintiff's Amended Complaint should be affirmed as a matter of law.

DATED:     July 14, 2022

Respectfully submitted,

JOHNSON & LAWS, LLC

By: _____
      Gregg T. Johnson

**Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

I, Gregg T. Johnson, hereby certify that the Brief of *Defendants - Appellees* was prepared in accordance with the following:

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(e) and Local Rule 28.1.1. because this brief contains 11,539 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a5) and the type style requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 14 characters per inch and Times New Roman type style.

Dated: July 14, 2022

Respectfully submitted,

JOHNSON & LAWS, LLC

By:     Gregg T. Johnson

47

## APPENDIX OF UNPUBLISHED CASES PROVIDED
## TO PRO SE APPELLANT

*Alvarez v. Peters,*
    2022 U.S. Dist. LEXIS 16062 (E.D.N.Y. 2022)

*Arnold v. Geary,*
    No. 09 Civ. 7299, 2013 WL 4269388 (S.D.N.Y. 2013)

*Creighton v. City of New York,*
    2017 U.S. Dist. LEXIS 21194 (S.D.N.Y. 2017)

*Deshawn Banks v. Pinker,*
    2012 U.S. Dist. LEXIS 63958 (S.D.N.Y. 2012)

*Gray v. Erfe,*
*No. 3:13-CV-39, 2015 WL 3581230 (D. Conn. 2015)*

*Holmes v. Grant,*
    No. 03 Civ. 3426, 2006 WL 851753 (S.D.N.Y. 2006)

*Kaid v. Akins,*
    No. 15-CV-1024, 2017 WL 4411955 (W.D.N.Y. Oct. 4, 2017)

*Lee v. Willins,*
    617 F.2d 320, 1980 US. App. LEXIS 19568 (2d Cir. 1980)

*Perez v. Hewitt,*
    No. 04 Civ. 10112, 2008 WL 780628 (S.D.N.Y. 2008)

*Phillips v. New York State,*
    2013 U.S. Dist. LEXIS 149215 (N.D.N.Y. 2013, No. 5:13-CV-
    00927 (DNH/TWD))

*Seabrook v. The City of New York,*
    No. 14CIV3059, 2016 WL 554823 (E.D.N.Y. 2016)

*Willis v. Rochester Police Dep't,*
    2018 U.S. Dist. LEXIS 166368 (W.D.N.Y. 2018)

*Wong v. LaPierre,*
    No. 8:07-cv-1110, 2011 WL 13248503 (N.D.N.Y. 2011)